BLACKSTONE CANAL NATL. BANK *vs.* JOHN W. OAST, *Admr. et al.*

JUNE 22, 1923.

PRESENT: Sweetland, C. J., Vincent, Stearns, Rathbun, and Sweeney, JJ.

*(1) Trusts. Bank Deposits. Intent.*

On the question of the establishment of a trust in relation to a deposit in bank, the form of the deposit is not conclusive. The test is the intention with which the deposit was made or changed. The primary and natural proofs of intention are the statements in regard thereto made by the person, the purpose of whose act is sought to be discovered. If such statements are consistent with the natural inferences arising from a consideration of the act itself, the proof of intention is much strengthened. The fact that the creation of the trust is not communicated to the beneficiary is not always controlling.

*(2) Trusts in Praesenti. Bank Deposits. Intent.*

An account originally opened by X. was changed by him to "X agent for Y." Y. had no knowledge of the fact.

*Held,* in view of all the circumstances of the case; the relations of the parties and the character of X. as disclosed by testimony, the proof of an intention to establish a trust fund for the benefit of Y. *in praesenti,* was clear.

*(3) Intent.*

If the intention with which an act is done is fairly open to two interpretations that interpretation should be favored which assumes that the act was performed with a right rather than a wrong intention.

INTERPLEADER. Heard on appeal of a respondent and appeal dismissed.

STEARNS, J. This is a bill of interpleader to determine the ownership of a fund on deposit in the complainant bank in the city of Providence in the name of "John Daley, agent

for Mrs. E. Stutt, 158 Berkeley Place, Brooklyn, New York."

John Daley died intestate December 31, 1921, aged sixty-eight years. The respondents, claimants of the fund, are the administrator of his estate and Mrs. Stutt.

When he was sixteen years of age, John Daley left his home in Tennessee and went to live with his uncle, the husband of Mrs. Stutt, in Brooklyn, N. Y. Within a year or two, he went to sea and continued to follow the sea until his death. He never married and the only one of his few relations whom he ever saw after his departure from home was his younger brother William, who came to see him in 1907, in Norfolk, where Daley's vessel was in port at the time. Both men had then reached middle age and the relations between the brothers, although friendly, were not intimate or affectionate. Beside his brother William, his only other heirs and next of kin were the descendants of a deceased half-sister, who were unknown to him, and in whom he took no interest.

Mr. and Mrs. Stutt and their children became the only family Daley had. With them he made his home when on shore leave. He kept some of his clothes and other possessions in the Stutt's house. When ill he was cared for there and in every way was one of the family. Although lacking the advantages of an early education, he became a skillful mariner and for years was in command of deep sea-going tug boats. At the time of his death he had accumulated a considerable fortune.

Mr. Stutt died in 1901, leaving to his widow, Mrs. Stutt, sufficient estate to enable her to rear her children and to accumulate some savings.

The relation between Mrs. Stutt and Daley was much like that of a mother and a trusted son. Her trust and confidence in him were complete. His affection and respect for her were strong.

In 1900 Daley wanted to buy a farm in Virginia. The price was $8,500. Unable to buy the property with his own

funds, at his request Mrs. Stutt drew her savings from a savings bank and turned over the money, $3,136.33, to Daley, who with this money was able to buy the farm. Daley took a conveyance in his own name, but left the deed in the custody of Mrs. Stutt. Several years later timber was sold off the land for $5,000 and this amount was deposited by Daley in his own bank account. No accounting of this profit was ever offered or asked for, nor was any payment either of principal or interest ever made.

Mrs. Stutt's needs were simple and her income was sufficient therefor. Daley at different times and to different people stated that what he had belonged to Mrs. Stutt. Mrs. Stutt was satisfied to have him use her money in his business ventures, or to deposit it in banks. She asked no questions and he gave but little information. He was a reticent man and uncommunicative in regard to his business.

In December, 1921, Daley called for the deed. He told Mrs. Stutt that he expected to sell the farm for $55,000, and that when he sold it he would "settle up" with her. No sale was made at that time, but since Daley's death the farm has been sold for $40,000.

Equitable proceedings are now pending in the courts of Virginia to impose a trust on this fund for the benefit of Mrs. Stutt.

In June, 1903, Daley opened an account in the National Bank of Commerce in Norfolk, Virginia. In the fall of that year there was a collision between a vessel over which Daley was in command and another vessel. Fearing that legal proceedings might be taken against him personally and that his property might be attached, he sought advice of his bank and his counsel. Acting on their advice a pretended mortgage and also a deed of trust of his property were then made, the object being to forestall any attachment. December 10, 1904, Mrs. Stutt at Daley's request executed at her home in Brooklyn a power of attorney to Daley, which he had forwarded to her for her signature and sent the same to him in Norfolk. By this instrument Daley was authorized to

receive, collect and deposit all money due Mrs. Stutt in such banks as he should deem proper. Mrs. Stutt was not informed of any reason for making this power of attorney, and so far as appears, it was never used by Daley.

By advice of the bank Daley closed out his account with the bank on December 15, 1904, and in return for the cash in bank he received certain bonds from the bank, which in March, 1906, the bank bought back from him in accordance with their agreement, paying to him the amount originally paid them by Daley with interest at 4%. At this time in 1906, apparently all fear of legal proceedings had passed Daley's mind, and the mortgage was regarded evidently as a nullity as no attention was paid to it for a number of years, until later when it was discharged as a matter of course in order to clear a title. The deed of trust to his farm remained uncancelled at the time of his death and was found among his papers. No suit was ever brought against Daley and there never was any other occasion, so far as appears, when Daley ever had any cause to fear either litigation or creditors.

In April, 1906, an account for $10,000 was opened by Daley with the Norfolk bank, in Norfolk, Va., under the name of "John Daley, Agent." No statement was made or asked for whom Daley was agent, and the form of account simply had reference to the form of signature for checks drawn thereon. This continued to be an active account with deposits and withdrawals until Daley's death. The balance of the account, $21,959.55 has since been withdrawn by the administrator.

The account in the complainant bank, which is the subject matter of interpleader, was opened on August 30, 1907, by Daley on one of the occasions when his vessel was in the port of Providence. The first deposit was $300. The account which was entered in the name of "John Daley" was subject to withdrawal by check in the usual manner. A small pass book was given to Daley upon which was the inscription "Blackstone Canal National Bank in account with John

Daley." An officer of the bank testified that this was not a savings bank book but was used merely as an acknowledgment of receipts. One witness, a friend of Daley's, testified that he went to the bank with Daley when this account was opened, and that Daley then told him that he was going to put some money in the bank for his aunt (Mrs. Stutt) in. Brooklyn. On cross-examination the accuracy of the witness' recollection of the exact date of the statement made by Daley was somewhat shaken, but the fact that the statement was made by Daley in connection with and at the time of some deposit on this account is established. At the end of 1910 the total deposits were $1,942.47. On or about January 28, 1911, Daley made a deposit of $200 and requested the bank to change the account to the name of "John Daley. Agent." The cashier of the bank testifies that he "insisted on knowing for whom he was agent, and he stated to me, he was agent for Mrs. Stutt, and I asked him to give us a signature card and put that statement on the card, and at my request he did so." This signature card, signed and written by John Daley, states that the account is that of "John Daley agent for Mrs. E. Stutt, 158 Berkeley Place, Brooklyn, New York."

This was the only account Daley ever had in complainant bank. Daley thereafter made twenty-four deposits on this account, the last deposit in the original deposit book being for $230 on January 2, 1919. In another pass book which was found among the effects of Daley after his death it appears that May 1, 1919, there was a deposit on this account of $847.44, and on September 11, 1920, a deposit for $800. No withdrawals were ever made at any time from this account, which continued unchanged until Daley's death. Neither Mrs. Stutt nor any of her family knew about this or any other bank account of Daley's until after his death.

The cause was heard on bill, answer and oral proof by a justice of the Superior Court who decided that Daley, at the time he had the title of the account changed in January, 1911, intended to create, and did then create, a trust *in*

*praesenti* for the benefit of Mrs. Stutt and that he was a trustee of this fund for her benefit at the time of his death.

The cause is here on the appeal of one of the respondents, the administrator, from a decree ordering the payment of said fund to Mrs. Stutt.

It is conceded by the respondent Oast that, in view of the facts and the form of deposit finally made by Daley, the question of the establishment of a trust is to be decided upon the facts and circumstances of the particular case. Precedents analogous to the case at bar are of value simply as illustrations of the application of the recognized rule of law to the facts of cases of a similar nature.

The acts of Daley in changing the deposit, with his explanatory declarations are, in connection with the circumstances, sufficient to support the decision of the trial justice that a trust was established. *Ray* v. *Simmons,* 11 R. I. 266. *Knagenhjelm* v. *R. I. Hos. Trust Co.,* 43 R. I. 559. The form of the deposit is not conclusive. The test is the intention with which the deposit was made or was changed. The primary and natural proofs of intention are the statements in regard thereto made by the person the purpose of whose act is sought to be discovered. If such statements are consistent with the natural inferences arising from a consideration of the act itself, the proof of intention is much strengthened. By changing the deposit, Daley voluntarily gave up his right as against the bank to treat the fund as his own. Any withdrawal from the fund thereafter must be made not in his own right but in the right and in the name of Mrs. Stutt. The fact that the creation of the trust was not communicated to the beneficiary in some cases is properly held to negative the intention of creating a trust. But in the present case, it has no such controlling effect. Daley was under great obligation to Mrs. Stutt for her kindness and help to him. At the time the change in the deposit was made she did not need the money, but she was growing old and her situation might change and she might be in need. The desire of Daley to benefit Mrs. Stutt and to make some

recognition of his appreciation of his many obligations to her can scarcely be questioned.   The only explanation suggested for finding a different intention on his part is that Daley still was afraid to have his deposit stand in his own name. But, as already stated, any fear of a suit by reason of the collision must have been much lessened in 1906 and have been entirely dissipated in 1911.   The fact that, although he continued to make deposits on this account, he never made any withdrawals strengthens the conclusion that this account was intended by Daley to be of a different character than his account in the Norfolk Bank.   The rule is sound, both in law and in common practice, that if the intention with which an act is done is fairly open to two interpretations that interpretation should be favored which assumes that the act was performed with a right rather than a wrong intention.   This general principle was referred to with approval in *Talbot* v. *Talbot,* 32 R. I. at p. 94.

Considering the circumstances, the relations of the parties and the character of Daley as disclosed by the testimony, the proof of an intention on his part to establish a trust fund for the benefit of Mrs. Stutt *in praesenti* is clear and satisfactory.

The appeal of the respondent Oast is dismissed; the decree of the Superior Court appealed from is affirmed, and the cause is remanded to the Superior Court for further proceedings.

*Hinckley, Allen, Tillinghast & Phillips.   Hayward T. Parsons,* for complainant.

*Pirce & Sherwood, Sidney Clifford,* for respondent Oast.

*Gardner, Moss & Haslam,* for respondent Stutt.