[No. 12494. Department One. March 13, 1915.]

J. R. CARMAN, *Appellant*, v. NELLIE M. CARMAN *et al.*, *Respondents*.[1]

TRUSTS—EXPRESS TRUSTS—CONTRACT—CONSTRUCTION. An agreement whereby a husband deeded a one-half community interest to his wife in consideration of which she agreed to execute a will to protect the husband "for one-half interest in all real estate . . . or money she may die possessed of," does not charge the land with an express trust; but leaves her free to dispose of it in any manner, and only affects property of which she may be possessed at the time of her death.

Appeal from a judgment of the superior court for King county, Albertson, J., entered June 4, 1914, dismissing an action to set aside deeds, tried to the court. Affirmed.

*Curtis J. Beedle*, for appellant.

*Vanderveer & Cummings*, for respondents.

[1]Reported in 146 Pac. 833.

Mount, J.—This action was brought by the plaintiff to set aside certain deeds made by him to the defendant Nellie M. Carman, upon the alleged ground that the property described in these deeds was conveyed to her in trust, and that she had violated the trust by conveying the property to the defendant Lorena Grace Carman. Upon issues joined, the case was tried to the court without a jury. After hearing all the evidence, the court concluded that "the plaintiff had no interest either legal or equitable in the property," and therefore dismissed the action. The plaintiff has appealed.

The facts, in substance, are as follows: For many years prior to the year 1913, the plaintiff and the defendant Nellie M. Carman were husband and wife. The defendant Lorena Grace Carman is their daughter. During coverture the appellant and his wife acquired the real estate in question. All of the property involved is real estate. When the property was acquired, it was placed in the name of the defendant Nellie M. Carman, and she maintained the property, paying the taxes, etc. In fact, Mrs. Carman during her married life has borne the greater burden of supporting the family.

In March, 1911, Mrs. Carman brought an action for divorce against her husband. While that action was pending, the parties thereto agreed upon a settlement and dismissal of the action. On March 29 of that year, the plaintiff, by quitclaim deed, transferred all of his interest in the property to Mrs. Carman in consideration of the dismissal of the divorce action. At the same time and as a part of that transaction, Mrs. Carman executed a will which, after the formal parts, recited in paragraph three as follows:

"I give, bequeath and devise all the rest, residue and remainder whatsoever of my estate, money and property, of every name and nature whatsoever, real, personal and mixed, of which I shall die seized, possessed, or in any manner whatsoever interested in or entitled, to my husband, Jason R. Carman, and my daughter Lorena Grace Carman, to be divided equally between them, share and share alike."

Thereafter the divorce action was dismissed and the appellant and his wife proceeded to live together. Soon after the 29th day of March, the appellant and his wife, while they were living together as husband and wife, signed the following agreement:

"Seattle, Washington, Mar. 29, 1911.

"This agreement, entered into this day, by and between Nellie M. Carman, the first party, and J. R. Carman, the second party, witnesseth, that whereas, the second party has this day conveyed by quitclaim deed to the first party, the undivided community interest in all the real estate we now own; and said second party agrees at all times to be truthful. In consideration of which the first party has this day executed a will to protect the second party for one-half interest in all real estate, mortgages, securities, or money she may die possessed of, as to the terms of said will, and that she will never alter said will, or execute another, without the knowledge and consent of the second party. It is further agreed that neither party to this agreement will ever again, by word or act, refer to the past in any manner reflecting upon the character of the other. It is further agreed that neither will accept any favors or attentions from the opposite sex, without the knowledge or consent of the other. The first party further agrees to never impart to L. G. Carman, our daughter, anything that would tend to reflect upon the character of her father, and destroy the respect a child should have for a parent.

"The transfer of the property and the execution of the will has been done for the express purpose of conserving the property interest and to promote the love, confidence and happiness which should exist between husband and wife after twenty-five years of married life.

"In witness whereof we hereunto subscribe our names.

"Nellie M. Carman.
"J. R. Carman."

Mrs. Carman, upon the trial, testified that this instrument was presented to her by her husband several days after the settlement above mentioned, and that she was requested to sign it; that she did not read the instrument, but that Mr. Carman read parts of it to her, and requested her to sign it;

that she did so without knowing its purport, in so far as it affected her will which she had already made. Mr. Carman, on the other hand, testified that she signed the instrument at the time of the settlement and in consideration for the settlement.

The attorney who prepared the will and was counsel for Mrs. Carman in the divorce case denied that it was signed at the time, or that he knew anything about the agreement. He also testified that, while the settlement was fully discussed in his presence, that no reference was made to this agreement; and that it was agreed at that time that Mrs. Carman should become the absolute owner of the land in question in consideration of the dismissal of the divorce case.

The appellant and his wife lived together thereafter for some little time as husband and wife, when she concluded that he had broken his promise to be faithful to her, and brought another action for a divorce, and a decree of divorce was granted on the 5th day of June, 1913. Thereafter, in July, 1913, fearing that Mr. Carman, so she testifies, might do her bodily harm in order to obtain the property, Mrs. Carman transferred the whole thereof to her daughter and took back from her daughter a declaration of trust. Thereafter this action was brought for the purpose and with the result hereinbefore stated.

It is argued by the appellant that the contract hereinbefore set out creates a trust in specific property, and that because the defendant Nellie M. Carman has transferred all of the property to her daughter, that she has therefore violated the trust, and the court should have decreed a half interest in the property to the appellant.

We think there is sufficient evidence in the record to show that this agreement was not a part of the original agreement wherein the property was transferred by the appellant to his then wife; and we are satisfied that the court so believed, because the decree recites that the "plaintiff has no interest legal or equitable in said property." But whatever may be

the fact in this respect, we are satisfied that, even if this agreement was a part of the original contract at the time the will and deeds were made, it does not create a specific trust in this property. This agreement recites that the appellant has conveyed an undivided community interest in all of the real estate to his wife, "in consideration of which the first party has this day executed a will to protect the second party for one-half interest in all real estate, mortgages, securities, or money *she may die possessed of*." No mortgages, securities, nor money, so far as this record shows, were owned at that time by the parties. The effect of this agreement clearly is, conceding it to be a valid agreement that, upon the death of Mrs. Carman, the property then owned by her is to be divided share and share alike between Mr. Carman and his daughter. It is manifest from the contract itself that Mrs. Carman was authorized to deal with the property thereafter as her separate and individual property; that she might sell it, exchange it, or dispose of any part of it as she saw fit during her lifetime, and that at her death, whatever property may be left or owned by her at that time in real estate, mortgages, securities, or moneys, is to be divided between Mr. Carman and Miss Carman, share and share alike. No other construction can reasonably be placed upon the contract. It therefore creates no express trust in specific property, but is simply a declaration to the effect that Mrs. Carman will give to Mr. Carman at her death one-half of the property of which she may die possessed. When she disposed of the property to her daughter in trust, she did not violate any of the terms of the contract. The appellant, therefore, is not entitled to have the deeds set aside, nor to an undivided interest in the property.

The judgment of the trial court must therefore be affirmed.

MORRIS, C. J., PARKER, HOLCOMB, and CHADWICK, JJ., concur.