[No. 16230.   Department One.   April 20, 1921.]

## In the Matter of the Estate of FRED HUBBARD.
## SARAH L. HUBBARD, *Administratrix, Respondent,* v.
## ALICE PICKRELL *et al., Appellants.*[1]

HUSBAND AND WIFE (65)—GIFTS (4, 6)—COMMUNITY PROPERTY—DELIVERY OF BONDS—SUFFICIENCY. A husband's delivery to his wife of bonds purchased with community funds, with a direction to keep them as they were hers, sufficiently showed a parting of dominion over the bonds with a present design that title should pass from donor to donee as a gift.

SAME (65)—GIFTS (4, 6). The fact that a wife, to whom a gift of bonds was made by her husband, placed them in a strong-box where the individual valuables of either and the community property of both were kept would not of itself overthrow the presumption from the evidence that she assumed absolute control over the bonds.

Appeal from a judgment of the superior court for King county, Gilliam, J., entered September 1, 1920, distributing an estate upon a final accounting. Affirmed.

*Elias A. Wright* and *Sam A. Wright,* for appellants.

*John P. Gallagher (C. C. Curtis* and *Edward Judd,* of counsel), for respondent.

FULLERTON, J.—Fred Hubbard died intestate in Seattle, King county, Washington, leaving an estate therein consisting of real and personal property. He left as his heirs at law, a widow and two grown daughters, children of a former marriage. The widow was appointed administratrix of the estate, and in due time filed her final account therewith, which was noted for hearing. At about this time, the daughters learned that the deceased had, prior to his death, invested five thousand dollars in liberty bonds, that these were in

[1]Reported in 197 Pac. 610.

the possession of the administratrix and had not been inventoried by her as a part of the estate. The administratrix was required to show cause why the bonds had not been inventoried, and why they should not be distributed to the heirs as property of the estate. At the hearing on the show cause order, the administratrix satisfied the presiding judge that the bonds had been purchased with the community funds of the deceased and herself, that the deceased had, during his lifetime, made a gift to her of his interest in the bonds, and that they were not property subject to administration as part of the estate. An order was entered accordingly, and this appeal is prosecuted therefrom.

It appears from the record that one of the daughters, some time before her father's death, instituted an action against him in which large damages were sought for injuries claimed to have been inflicted upon her by her father at a time when he ejected her from his home. It also appeared that her father had at that time on deposit with Seattle banks sums of money aggregating $5,739.09, and fearing the result of the action instituted against him, withdrew the money and again deposited it in the name of his wife's sister-in-law, one Minnehaha Youngblood. Mrs. Youngblood was with him at the time the deposit was made, and as soon as the transaction was completed, turned over to him the bank book showing the deposit with a number of signed checks, and from thence on had no further connection with the transaction. Later on Hubbard drew out of the account $5,000 which he invested in the liberty bonds here in question, and $300 which was used for purposes not shown. The remainder of the money was afterwards discovered and distributed as property of the estate.

Mrs. Youngblood testifies that, shortly after pur-

chasing the bonds, Mr. Hubbard brought them to his home and in her presence handed the bonds to his wife, the present administratrix, and told her to keep them as they were hers. It was on the testimony of Mrs. Youngblood that the trial court based its conclusion that the bonds were given to the wife. The appellants question her veracity, arguing that it is impossible to believe her story when it is read in the light of the entire record. But we find nothing in the record which to our minds in any manner impeaches her statement. Indeed a reading of the record impresses us with her honesty and sincerity, and the trial judge had the additional advantage of observing her conduct and demeanor while testifying. Since he believed her, we see no reason for reaching a contrary result.

It is true, as the appellants argue, that to consummate a gift there must be a parting with the dominion over the subject-matter of the gift, with a present design that the title to the property shall pass from the donor to the donee. But we think that here there was a clear showing of such a passing and of such a design. The married life of the parties had extended over a number of years, and their property had been earned by their joint efforts in the conduct of a little store in which the wife had taken more than a mere helper's part. It is not strange, therefore, that he should prefer her to his daughters, one of whom at least he had some reason to regard as unfilial.

Again, it is said that Mrs. Hubbard did not assume absolute control over the bonds until after her husband's death. But the evidence is that she put them in the place where valuables of this sort were usually kept, whether the individual property of either of them or the community property of both. The fact that Mr. Hubbard may have had access to the place of deposit

does not argue that the property was not hers or was not under her dominion or control. The same strong-box usually guards the valuables of the spouses in the ordinary married home, be the same separate or community, and we opine that it would come as a shock to many such to learn that it were the law that this intermingling prevented the gifts made from the one to the other becoming effective.

A further perusal of the inquiry would not be enlightening. The order is affirmed.

PARKER, C. J., HOLCOMB, BRIDGES, and MACKINTOSH, JJ., concur.