[No. 18022.   Department Two.   October 9, 1923.]

*In the Matter of the Estate of* GEORGE BOOLE, *Deceased.*

HELEN KING BOOLE *et al., Respondents,* v. GEORGE WARREN BOOLE *et al., Appellants.*[1]

GIFTS (4)—CONSUMMATION—DELIVERY OF BONDS—EVIDENCE—SUF-
FICIENCY. The consummation of the gift, by a husband to his wife,
of bonds and war savings stamps, by a delivery thereof, is suffi-
ciently shown where it appears that, being his separate property, he
placed them in their common safety deposit box, enclosed in en-
velopes indorsed in his handwriting as being the property of his
wife, and that he made repeated statements to intimate business
and social friends, and in a writing, that he had given the bonds to
her.

Appeal from a judgment of the superior court for
King county, French, J., entered March 24, 1923, upon
findings in favor of the claimant, in proceedings in
probate to determine the title to personal property,
after a trial on the merits to the court. Affirmed.

*Stratton & Kane* and *Howe, Farrel & Meier,* for ap-
pellants.

*Stephen V. Carey,* for respondents.

PARKER, J.—This is an appeal from a decree of the
superior court for King county, decreeing Helen King
Boole to be the owner, in her own separate right by
virtue of a gift from her deceased husband George
Boole during his lifetime, of certain U. S. Liberty and
Victory bonds, of the face value of $90,000, and cer-
tain war savings stamps of the face value of $1,000;
George Warren Boole and others claiming as residuary
legatees under the will of George Boole, deceased, that
all of these securities constituted a part of the estate
of George Boole at the time of his death, and are now

[1]Reported in 219 Pac. 4.

part of his estate, subject to administration by the executors under his will.

This controversy was brought into the superior court by petition of Mrs. Boole, filed in the probate proceedings, joined in by herself and the Dexter-Horton National Bank of Seattle as executors under the will, and upon citations issued to all other persons interested in the estate as legatees. A trial was had upon the merits, all interested parties appearing, which resulted in a decree in favor of Mrs. Boole, awarding to her all of these securities as prayed for. From this disposition of the controversy, George Warren Boole and other residuary legatees claiming under the will have appealed to this court.

George Boole, for many years prior to his death, which occurred on May 27, 1922, had been a prosperous merchant of the city of Seattle, and had accumulated property, as the inventory and appraisement of his estate showed, of approximately $1,000,000, excluding the $91,000 of securities here in question. All of this property, including these securities, the record warrants us in concluding, had been accumulated by Mr. Boole as his separate property. Indeed, it is so conceded, as we understand counsel for the respective parties to this controversy. He had retired from active business a few years before his death, and had accumulated no community property after his marriage to Helen King Boole, which occurred in January, 1918. He was then sixty years old and she was then forty years old. In August, 1921, he executed his last will and testament. He had no children or lineal descendants in any degree at the time of the making of his will, nor did he have any children or lineal descendants at the time of his death. The will named certain of his nephews and nieces and a sister as residuary lega-

tees under certain conditions. These persons being interested in the enhancement of the value of the estate left by Mr. Boole, made claim that the securities here in question were his sole and separate property at the time of his death and as such became subject to administration as a part of his estate. They are the appellants in this court. By the terms of his will, Mr. Boole named Mrs. Boole and the Dexter Horton National Bank of Seattle joint executors thereof.

In December, 1919, Mr. and Mrs. Boole jointly rented from W. D. Perkins & Co., bankers, a safe deposit box in the safe deposit vault of that institution in Seattle, both Mr. and Mrs. Boole signing the contract therefor. Each was accordingly given a key to the box, each being thereby furnished free access to the box untrammeled by the control of the other. In this box securities and valuables of each were kept, and each went to and opened the box alone from time to time wholly unrestrained by the other as occasion might require in his or her own interest, though there were times when both were present when the box was opened. During his lifetime Mr. Boole purchased the $90,000 of U. S. Liberty and Victory bonds and the $1,000 of war savings stamps here in question; these purchases manifestly being made with funds which were his sole and separate property. The Liberty and Victory bonds, we are warranted in assuming, were payable to bearer. The war savings stamps, we are warranted in assuming, were caused by him to be issued in the name of Mrs. Boole and made payable to her in the usual manner in which such securities are made payable.

The bonds were placed by Mr. Boole in five envelopes such as are commonly used for that purpose; ten $1,000 bonds of the first Liberty Loan being placed in

one envelope, totaling $10,000; three $10,000 bonds of the second Liberty Loan being placed in another envelope, totaling $30,000; two $5,000 bonds of the third Liberty Loan being placed in another envelope, totaling $10,000; three $10,000 bonds of the fourth Liberty Loan being placed in another envelope, totaling $30,-000; two $5,000 bonds of the Victory Loan being placed in another envelope, totaling $10,000; and ten $100 war savings stamp certificates being placed in another envelope, totaling $1,000. All of these bonds and war savings stamps were kept in these envelopes in the safe deposit box of Mr. and Mrs. Boole until after his death. On each of the envelopes containing the Liberty and Victory bonds there was indorsed a statement by Mr. Boole in his own handwriting in words and figures the same, evidencing the ownership of their respective contents, as follows: "Property of Mrs. Helen King Boole, 521 Harvard Ave. North, Seattle, Wash.," followed by a correct statement upon each envelope, also in Mr. Boole's own handwriting, of the number and total amount of bonds in each. On the envelope containing the war savings stamp certificates, there was indorsed by Mr. Boole, in his own handwriting, the following: "War savings stamps. Mrs. George Boole, 521 Harvard Ave. N." followed, in his own handwriting, by a correct statement of the number and denomination of savings stamp certificates and their total face value. This was the condition of all of these securities, in so far as we are here concerned with their possession long prior to and up to the time of Mr. Boole's death.

Several of Mr. Boole's intimate business and social acquaintances testified upon the trial, in substance, that he had stated to them respectively during the period of a year or so immediately preceding his death,

that he had given to Mrs. Boole approximately $100,-000 in government bonds. Mrs. Boole testified that she had seen and examined all these securities at times when she was alone examining the contents of the safe deposit box, though she did not at any time physically remove or take them away with her, but left them in the box as she left other valuables of her own deposited therein.

On April 5, 1922, some seven weeks prior to his death, Mr. Boole wrote a note to a Mr. Webster, a representative of the New York Life Insurance Company, in which he said, among other things: "Regarding Liberty bonds, I have given these to Mrs. Boole and she wants to keep them intact." This was said by Mr. Boole to Mr. Webster incident to negotiations between them looking to the purchase of a contract from the insurance company securing to Mrs. Boole a twenty-year income of $250 per month, and in response to a suggestion from Mr. Webster that Mr. Boole make payment therefor from a sale of some of these government bonds or securities, if he could not otherwise then raise the money to make such payment; Mr. Webster being advised that these securities were in existence and were the property of Mrs. Boole, as he had been told by Mr. Boole, and might be rendered available to pay the purchase price of such a contract in the interest of Mrs. Boole.

After the death of Mr. Boole, all of these securities remained in Mr. and Mrs. Boole's safe deposit box until after the probating of Mr. Boole's will and the confirmation by the court of the appointment of Mrs. Boole and the Dexter Horton National Bank as executors under the will, when Mrs. Boole and a representative of the Dexter Horton National Bank, her co-executor, went together to the box and by agreement between

them placed the bonds, including the war savings stamps, in the hands of the Dexter Horton National Bank, with a view of having them preserved and such of them as might mature cashed pending the settlement of the claim made by the residuary legatees that the bonds and savings stamps were rightfully a part of the estate of Mr. Boole subject to administration by the executors as such. There is but little conflict in the evidence. There are other side lights therein, but none, we think, lessening or impairing the foregoing summary as the controlling facts of the controversy.

It is here contended in behalf of appellants that these facts fail to show a gift of the bonds by Mr. to Mrs. Boole during his lifetime with that degree of certainty required by law to support such a gift, and especially fail to show a delivery of the bonds by Mr. to Mrs. Boole during his lifetime. It seems to us, in the light of Mr. Boole's repeated statements made to several of his intimate business and social friends, in substance, that he had made such a gift to Mrs. Boole, not merely that he intended to do so; his declaration in his note to Webster to the same effect, and his statement therein of Mrs. Boole's desire to "keep them intact"; his indorsements upon each of the envelopes stating them to be the property of Mrs. Boole; and the placing of them in their common safe deposit box, freely accessible to her and manifestly with her knowledge, leaves little room for doubting that he fully intended to make a gift of the bonds to Mrs. Boole, and that he died in the firm belief that he had effectually made such a gift to her. Not having any children or lineal descendants possessing any rightful claim of heirship against his estate, the whole of his estate being his separate property, and there not appearing to be anyone having any claim against him or against his estate rested upon

moral obligations, nothing could seem more natural or morally right than this gift of less than one-tenth of his estate outright to his wife, made when he was past middle life and her senior by twenty years.

The argument of counsel for appellants is more particularly addressed to the question of the sufficiency of delivery of the bonds by Mr. to Mrs. Boole during his lifetime to effectually consummate his intended gift of them to her. It is insisted that, because the bonds were placed in the common safe deposit box of both of them, and she did not physically remove them to some place where they would be physically inaccessible to him, there was no effectual delivery of them by him to her. We think the question is not so much as to whether or not the bonds were placed in Mrs. Boole's possession beyond the physical access of Mr. Boole, but whether or not she acquired possession of them from him as a gift to her under such circumstances as to deprive him of the legal right to repossess them as his own. This, we are quite convinced, she did. She knew they were in their common safe deposit box placed there as an intended gift to her from him. She examined them there alone with full power and control over them. Surely, the mere fact that she left them there for safe keeping as she left some of her other valuables there, cannot rightly be construed as a failure on her part to take and assume possession of them as her property, nor that he intended to retain possession and control over them as his property. Probably, the leading decision of this court on the question of the necessary degree of proof to establish the consummation of a gift is that rendered in *Jackson v. Lamar*, 67 Wash. 385, 121 Pac. 857, a decision many times cited and quoted with approval in our subsequent decisions. While in that case the facts were held not to be sufficient to prove an

effectual gift because of want of sufficient certainty as to its delivery, Judge Morris, speaking for the court, made the following general and, we think, correct observations touching the problem of the sufficiency of proof in such cases:

"As is said in Thornton on Gifts, § 217:

" 'What constitutes a gift—what combination of circumstances will bring a case within the legal definition of a gift—is essentially a matter of evidence and not of law; and each particular case must depend upon its own circumstances, and must be such as to authorize the belief that a gift was intended.'

"Under the old cases, gifts were looked upon somewhat with suspicion as fruitful sources of litigation, lacking those formalities and safeguards which the law throws around wills, and creating strong temptation to the commission of fraud and perjury. They were not favored by the law, and almost conclusive evidence was required to sustain them. Such, however, is not now the rule. The law regards with favor every man's right to dispose of his property as he will and when he will, and favors as much his disposition by gift, when the intent and the act are clearly established by competent evidence, as though he had undertaken to dispose of his belongings by the stricter formality of a written disposition. We find the rule so stated in *Crook v. First Nat. Bank of Baraboo,* 83 Wis. 31, 52 N. W. 1131, 35 Am. St. 17:

" 'The law favors free and comprehensive power of disposition by an owner of his property, and the rigor of the earlier cases has been materially relaxed, both as to the subjects of such gifts and as to what will serve as a delivery to make them effectual'."

In our recent decision in *In re Hubbard's Estate,* 115 Wash. 489, 197 Pac. 610, touching the question of the sufficiency of delivery of a gift made in a somewhat similar manner to that here in question, we said:

"Again, it is said that Mrs. Hubbard did not assume absolute control over the bonds until after her hus-

band's death. But the evidence is that she put them in the place where valuables of this sort were usually kept, whether the individual property of either of them or the community property of both. The fact that Mr. Hubbard may have had access to the place of deposit does not argue that the property was not hers or was not under her dominion or control. The same strong-box usually guards the valuables of the spouses in the ordinary married home, be the same separate or community, and we opine that it would come as a shock to many such to learn that it were the law that this intermingling prevented the gifts made from the one to the other becoming effective.''

We are of the opinion that the facts of this case show an effectually consummated gift of the $90,000 of Liberty and Victory bonds here in question, from Mr. to Mrs. Boole during his lifetime.

The gift of the $1,000 of war savings stamps, we think, is supported also by the record, though it rests upon slightly different considerations from those above noticed with reference to the gift of the Liberty and Victory bonds. We note that in the statements made by Mr. Boole during his lifetime to his intimate business and social friends touching a gift to Mrs. Boole, he seems to have used the words ''bonds'' or ''government bonds'' and not ''war savings stamps,'' and the same is true in his statement in his note to Webster where he uses the words ''Liberty bonds,'' in speaking of what he had given to Mrs. Boole. These savings stamps, however, seem to have passed into the possession of Mrs. Boole substantially in the same manner and to the same extent as the bonds, and we also have the indorsement of Mr. Boole in his own handwriting upon the envelope containing them, plainly indicating that they are the property of Mrs. Boole. In addition to this, we are warranted in assuming that they were

bought by Mr. Boole and caused to be issued in the name of Mrs. Boole, having in mind that war savings stamps are issued in some person's name and are not in terms payable to bearer. So after all, we think when Mr. Boole stated to his intimate business and social friends that he had made a gift of "bonds" or "government bonds" to Mrs. Boole, that he must have used the words "bonds" or "government bonds" in such a general sense as to include these war savings stamps. We note that the record before us warrants the assumption that all of these Liberty and Victory bonds and savings stamps were purchased and acquired by Mr. Boole and placed in their respective envelopes and the indorsements made thereon, before the making of the statements by Mr. Boole to his business and social friends concerning a gift to Mrs. Boole. So, under all the circumstances, we are also of the opinion that he effectually made a gift of these savings stamps to Mrs. Boole during his lifetime.

The decree is affirmed.

MAIN, C. J., FULLERTON, TOLMAN, and PEMBERTON, JJ., concur.