[No. 21293. Department One. October 9, 1928.]
MIRIAM DINGLEY *et al., Respondents,* v. HARRY W. ROBINSON *Appellant,* SEATTLE TITLE TRUST COMPANY, *Defendant.*[1]

*Roberts, Skeel & Holman, Elwood Hutcheson,* and *Williams & Davis,* for appellant.

*Tucker, Hyland & Elvidge, Mary H. Alvord, W. T. Perkins,* for respondent Dingley.

*Bausman, Oldham & Eggerman* and *David H. Jarvis,* for respondent Seattle National Bank.

MITCHELL, J.—This action was brought to recover, first, the possession of certain stocks and bonds of the approximate value of sixty-five thousand dollars, which the defendant Harry W. Robinson claimed had been given to him by his mother, Mrs. Francena Rob-

[1]Reported in 270 Pac. 1018.

inson; and second, to recover the proceeds of two one thousand dollar bonds of the Nevada-California Electric Company, and money in the sum of $2,474.25, which he claimed had been given to him by his mother. At the trial, the plaintiffs waived all right to recover on account of the $2,474.25 alleged to have been improperly used by Harry W. Robinson of his mother's money. Findings and judgment were entered to the effect that the stocks and bonds described in the first cause of action were not given to Harry W. Robinson by his mother; and as to the two bonds of the Nevada-California Electric Company mentioned in the second cause of action, it was found and determined that they had not been given to him, but that he had sold them for $2,095.66, out of which he had disbursed the sum of $1,061.05 on account of the last sickness and funeral of his mother; leaving a balance of $1,034.61, in which amount, with interest, judgment was given against him. He has appealed.

Mrs. Robinson had three children, one of whom died without issue; the other two were Mrs. Miriam Dingley, respondent, and Harry W. Robinson, appellant. She came to Seattle in March, 1926, and from that time until her death on October 25, 1926, she lived with her son and family. She was eighty-two years of age at the time of her death, and though in good health, she had her son attend to most of the details of her business. Upon arriving in Seattle, she personally rented and paid for a box in the safety deposit vaults of the Seattle National Bank, into which she put and kept all of her bonds and stocks. She arranged with the bank that her son should also have access to the box, procuring two keys, one for herself and another for him, the one for him being delivered to and kept by him. Thereafter, it appears, she never went to the box. He opened it sixteen times for the purpose,

among others, of getting coupons for collection, all of which, together with other collections from her securities, were placed to her credit in her check account with the bank. She underwent a major surgical operation on or about October 19, 1926, and died therefrom about midnight October 25, 1926. Early the next morning, not secretly but openly and under the advice of an attorney, the appellant took all the securities out of the box and delivered them to the Seattle Title Trust Company upon the written stipulation that the trust company would hold them as a stakeholder subject to contemplated litigation.

The great bulk of the evidence in this case refers to the personal relations between Mrs. Robinson and her daughter and son, and the amount of money the mother had rather freely given to each of her two children. That on the part of the appellant tended to show an estrangement between the mother and daughter the last several years, and that, altogether, she had furnished her daughter appreciably more money than she had the appellant; on the contrary, that on behalf of the daughter, tended to show that, while there was some estrangement, the mother continued to give her daughter money and protested her purpose of finally disposing of her property equally between the two children, and that the amount of money the daughter had received was about equal to that given to her brother.

This testimony, as we understand, was introduced as having a bearing upon the matter of intention on the part of Mrs. Robinson—an essential element of a gift. We cannot review all of this evidence but, among other things, it shows very clearly that Mrs. Robinson was a cultivated, shrewd, provident person. She was practical and methodical and exceedingly careful in keeping a diary in which she entered, with commend-

able regularity and care, ordinary events, including her relations and letters, as well' as gifts of money to each of her children; and not a line is to be found in it or any of her letters of any intention to give away all of her property. She thought she would recover from her operation. She said so in a letter to her daughter written the evening before the operation, which letter she directed should be mailed in case she did not survive.

Appellant relies upon a gift of property in the summer of 1926, but of that there is no competent testimony. Again, he relies upon a gift of it one or two days before the surgical operation. This latter, upon the testimony of his wife to the effect that Mrs. Francena Robinson said to the appellant in her presence, without any inquiry or suggestion, that there could be no trouble, "all of the property is in the deposit box in your name, you have the key and it is yours."

A gift will not be presumed but it must be shown by evidence that is "clear, convincing, strong and satisfactory," and we are in accord with the remark of the trial judge that this evidence does not measure up to that test. Upon a consideration of the character of the deceased, as described by the testimony of her friends and a great many of her letters and her diary, it is almost inconceivable that she should give away all of her property.

Nor do we think the evidence in this case was sufficient to show delivery of the property. The rule in this respect is as stated in *In re Slocum's Estate*, 83 Wash. 158, 145 Pac. 204, as follows:

"In order to constitute a gift of personal property, three things are necessary: (a) An intention on the part of the donor to presently give; (b) a subject-matter capable of passing by delivery; and (c) an

actual delivery at the time. *Hecht v. Schaffer,* 15 Wyo. 34, 85 Pac. 1056; *Jackson v. Lamar,* 67 Wash. 385, 121 Pac. 857; *Meyers v. Albert,* 76 Wash. 218, 135 Pac. 1003. The delivery must be such as will divest the donor of the present control and dominion over the property absolutely and irrevocably and confer upon the donee the dominion and control. *Basket v. Hassell,* 107 U. S. 602. The distinction that exists between gifts *inter vivos* and gifts *causa mortis* need not here be defined. The pivotal facts which give caste to the various transactions in the present case are the same, whether the gifts or attempted gifts be considered *inter vivos* or *causa mortis.* A gift will not be presumed, but he who asserts title by this means must prove it by evidence which is clear, convincing, strong and satisfactory."

She maintained dominion over the property until she died. He attempted to exercise no dominion over it until the next morning after her death, although he had a key to the deposit box for a period of time greatly antedating the dates referred to in both of the so-called gifts.

Appellant's authorities are not in point. Those first mentioned may be noticed. In *Phinney v. State ex rel. Stratton,* 36 Wash. 236, 78 Pac. 927, the donor made what was treated as an assignment of nearly all of his bank account, to become operative in case of death, by writing and delivering to the donee a check on the bank. It was in writing and the only practical means of delivery.

In *MacKenzie v. Steeves,* 98 Wash. 17, 167 Pac. 50, the donor during his last sickness made a gift of an automobile which, of course, he could not physically hand over to the donee. The donee took possession of it at once, during the donor's lifetime and thereafter continued in possession of it until disturbed by subsequent litigation that resulted in her favor. In *In re Hubbard's Estate,* 115 Wash. 489, 197 Pac. 610, the

husband brought bonds to his home and gave them to his wife and the fact that she kept them in a strong box used by both husband and wife did not destroy her dominion and control over them.

In *In re Boole's Estate*, 126 Wash. 632, 219 Pac. 4, husband and wife jointly rented a safety deposit box for their valuables, each having a key to the box. The government bonds involved were in envelopes on which the husband made endorsements stating them to be his wife's property, and it further appears that he stated verbally and in writing to others that he had been giving government bonds to his wife.

The evidence in the present case falls far short of the proof in those cases, and we approve the findings and judgment of the trial court that there was no gift of the securities mentioned in the first cause of action.

Nor were the Nevada-California Electric Company bonds involved in the second cause of action given to the appellant, as we understand the proof. Mrs. Francena Robinson's check account at that time was limited, and manifestly it appearing that her sickness would be expensive, the appellant used the bonds for that purpose. Out of the amount realized for them he spent considerable on her last sickness and funeral. The balance he should account for as the trial court determined.

Affirmed.

FULLERTON, C. J., TOLMAN, FRENCH, and PARKER, JJ., concur.