[No. 21702. Department Two. June 3, 1929.]

FLOYD G. ROGERS, *Appellant*, v. LOULA M. C. JOUGHIN *et al.*, *Respondents*, METROPOLITAN LIFE INSURANCE COMPANY, *Defendant.*[1]

[1]Reported in 277 Pac. 988.

*Furber & Furber (Lewis M. Dawson,* of counsel), for appellant.

*Carkeek, McDonald & Harris,* for respondents.

FRENCH, J.—Floyd G. Rogers and Cora Edith Rogers, his wife, were married in October, 1917. Cora

Rogers had, prior thereto, been married to a man by the name of Woodrow, had been divorced, and, in the divorce proceedings, had been awarded certain real property in the city of Seattle which belonged to her at the time of her marriage to Mr. Rogers. She also had a small bank account, and thereafter inherited certain property from her father and mother. Cora Rogers died in January, 1928. In August, 1927, she purchased from the Metropolitan Life Insurance Company a paid-up annuity bond, providing for certain payments to her during her lifetime, the principal sum payable to her two sisters, a nephew and a niece. Shortly after the death of Mrs. Rogers, Mr. Rogers was appointed executor under her will, he being named as a beneficiary thereunder being suitable to administer the estate, whereupon, for the first time, he discovered this annuity bond, and this action was instituted to recover thereon.

The theory of plaintiff's action is set forth in the following paragraphs of his complaint:

(II) "That, at all times herein mentioned, the defendant Metropolitan Life Insurance Company has been, and now is, a corporation, duly organized under the laws of the state of New York, and doing business in the state of Washington. That the defendants Loula M. C. Joughin, Ruby B. Carlton, Carlton C. Joughin and Virginia M. Joughin are named as beneficiaries, and claim some interest in the paid-up annuity bond and proceeds thereof, hereinafter referred to.

(III) "That all the property of plaintiff and his wife, said Cora Edith Rogers, whether existing at the time of marriage or since acquired, has been commingled, invested and reinvested, and that all property of said parties and each of them at all times during their married life was, and by said parties was agreed to be, community property. That the major portion of the assets of said marital community consisted of United States Liberty Loan Bonds, kept in a safe de-

posit box to which each of said parties had access. That said Liberty bonds were acquired out of moneys earned by plaintiff in the real estate and brokerage business, during the existence of said marital community.

(IV) "That, at all times during the marital life of said parties, it was understood and agreed by and between them, that all of their property, whether acquired separately or as a community, should upon the death of either, go to the survivor, to the exclusion of all collateral heirs. That mutual wills were executed to carry said agreement into effect. That, on or about July, 1927, said Cora Edith Rogers was informed by physicians that she was suffering from cancer and had but a short time to live. That, in pursuance of said mutual agreement, plaintiff and his wife on the 11th day of August, 1927, made and executed their last mutual wills, each leaving all property whether community or separate, to the surviving spouse. That the will of Cora Edith Rogers made at said time, naming the plaintiff as executor and sole beneficiary, is the identical will referred to in paragraph one of this complaint and admitted to probate on the 31st day of January, 1928, in the above entitled court.

(V) "That, immediately after the execution of said wills, to wit, on or about the 17th day of August, 1927, the said Cora Edith Rogers in violation of said mutual agreement and wills, and secretly, fraudulently and without the knowledge or consent of the plaintiff, took from said joint safe deposit box certain of the United States Liberty Loan Bonds above referred to of the approximate value of nine thousand four hundred eighty-three and 71/100 dollars ($9,483.71) and converted and paid the same to the Metropolitan Life Insurance Company, a corporation, one of the defendants above named, for and in consideration of the issuance to her of a paid-up annuity bond (Bond No. 2332 A. B.) of said company, the exact contents of which are to plaintiff unknown; but that plaintiff is informed and believes, and therefore states the fact to be that said annuity bond provided for a payment of one hundred fifty dollars ($150.00) quarterly to Cora

Edith Rogers, during her lifetime, with the principal sum of $9,483.71, less the payments to Cora Edith Rogers in her lifetime, payable on the decease of said Cora Edith Rogers to her sister, Loula M. C. Joughin, her sister Ruby B. Carlton, her nephew Carlton C. Joughin and her niece Virginia M. Joughin, share and share alike.''

The case was tried before the court without a jury, judgment rendered denying the relief sought, and this appeal follows.

Appellant claims the right to recover on two theories: First, that it was mutually agreed between Floyd Rogers and Cora Rogers that each would will to the other all property owned or acquired; second, that it was mutually agreed that all of the property belonging to them should be community property, and as a matter of fact it was so commingled, handled and treated as to make it community property under the decisions of this court.

■■ Answering the first contention of counsel, it must be remembered that the will of the testator does not take effect until his death, and does not in any manner prevent the testator from disposing of his property during his lifetime. *Carman v. Carman,* 84 Wash. 402; 146 Pac. 833. Where mutual wills have been executed and no reference is made therein to any agreement for the execution of such wills, parol evidence of such oral agreement is not admissible. In *re Edwall's Estate,* 75 Wash. 391, 134 Pac. 1041; *Dolan v. Weir,* 134 Wash. 560, 236 Pac. 285.

■■ If it be conceded that the effect of the agreement which is pleaded in the above quoted portions of the complaint was simply an agreement to make a will, then, even though not an enforcible agreement, it was, as a matter of fact, fully performed. If it be claimed that the agreement went further and created a trust, then an express trust cannot be proven by parol.

*Belcher v. Young,* 90 Wash. 303, 155 Pac. 1060. If it be claimed that there was an implied trust created by reason of the execution of the wills, that contention is answered by *Dolan v. Weir, supra.*

But the agreement itself as testified to by appellant was made before marriage, and the first mutual wills were executed before marriage, and under Rem. Comp. Stat. § 5825, the agreement was void, there being in this state no distinction between contemplation of marriage and consideration of marriage. *Koontz v. Koontz,* 83 Wash. 180, 145 Pac. 201.

Appellant complains of the admission of certain evidence. First, the evidence of a Mr. Thompson as to certain declarations made by Mrs. Rogers. But Mr. Thompson was called as a witness for appellant, and was asked, not for the whole detailed conversation that took place at the time with Mrs. Rogers, but for a part of the conversation, and on cross-examination was asked for the balance of the conversation. This was clearly admissible, even though the declarations so elicited may be self serving. *State v. Regan,* 8 Wash. 506, 36 Pac. 472.

Counsel also objects to the admission of a certain receipt with the written declaration thereon in the handwriting of Mrs. Rogers, touching on the question of her individual ownership of the property covered by the receipt. This was admissible under the rule that possession and control of property is evidence of ownership, and declarations made by the owner in possession as to his ownership may be considered. Wigmore on Evidence (2d ed.), Vol. 3, p. 799.

It is conceded that this annuity was purchased without the knowledge or consent of the appellant, and if paid for with community money, then appellant is entitled to a reversal of this case and to a recovery. The record clearly establishes that, at the time of the mar-

riage, Mrs. Rogers owned a considerable amount of real property scattered over the city of Seattle, and had $500 in a savings account in the National City Bank. The record is clear that, thereafter, from time to time, she received considerable sums of money from the estate of her father. Mrs. Rogers seems to have been associated with her husband in business to a considerable extent, and to have largely handled the money for the community. The community maintained a checking account in the Metropolitan Bank; a savings account in the Metropolitan Bank; a savings account in the National Bank of Commerce; and Cora Rogers had a savings account in the People's Savings Bank. In addition thereto, Cora Rogers maintained a savings account in the Seattle National Bank, and, from time to time, at dates generally corresponding with the times when remittances were received from her father's estate, and when sales of her separate property were made, or when withdrawals were made from other accounts standing in her name in still other banks, deposits were made in this savings account, or time certificates of deposit were taken out in the National City Bank in the name of Cora E. Carlton, that being her maiden name. In 1925, Mr. and Mrs. Rogers left Seattle for the east, and at the time, Mr. Rogers testified that he told Mrs. Rogers to take all their money and put it in New York drafts, and that, at that time, she stated that all their money was in New York drafts. Mrs. Rogers, however, at that time, retained in her possession the certificates of deposit from the Seattle National Bank aggregating more than eleven thousand dollars. Thereafter, Mr. and Mrs. Rogers returned to Seattle, having made some additions to their savings, and, having converted their money largely into Liberty bonds, approximately twenty-two thousand dollars in Liberty bonds were

placed in the safe deposit box to which each had access. There can be no question from an examination of the record but what between eleven and twelve thousand dollars of these Liberty bonds were purchased with the money which Cora Rogers had, through all the years, kept in her own name in certificates of deposit in the Seattle National Bank.

Without in any way attempting to detail the evidence, which is voluminous, there can be no question but what all the money represented by the time certificates of deposit in the Seattle National Bank was separate money, and that, up until the year 1925, at least, Cora Rogers intended to, and did, keep it as her separate money.

It is clear from the evidence that this money was used to purchase more than eleven thousand dollars worth of Liberty bonds which were in the safety deposit box in which were also Liberty bonds belonging to the community. Counsel argues that this is a commingling whereby the bonds would lose their separate character and become community property. We think this argument is fully answered by the case of *In re Hubbard's Estate,* 115 Wash. 489, 197 Pac. 610.

 On the question of the oral agreement pleaded, that all property, whether separate or otherwise, should be considered as community property, counsel are confronted with the following well established principles of law:

(1) That the status of property, whether separate or community, is to be determined as of the date of its acquisition;

(2) That this rule is equally true with reference to personal property as well as real property;

(3) That, if the property is once shown to have been separate property, the presumption is that it

continues separate property until that presumption is overcome by evidence;

(4) Separate property continues to be separate property through all its changes and transitions as long as it can be clearly traced and identified;

(5) That the rents, issues and profits of such property remain separate property.

In *In re Brown's Estate,* 124 Wash. 273, 214 Pac. 10, our former cases have all been reviewed, and the above propositions of law enunciated.

There is another proposition of law well established in this state, i. e., that the character of property cannot be changed from that of separate property to community property, or community to separate by the oral agreement of the spouses alone.

Having this separate money, some of which was received from the sale of admittedly separate real property and some from her father's estate, it will be presumed that, in making the investment in this annuity, Cora Rogers was using her own money, for "the presumption is always in favor of honesty and fair dealing rather than of the contrary." Moreover, "the right of a spouse in separate property is as sacred as is the right in their community property." *Guye v. Guye,* 63 Wash. 340, 115 Pac. 731, 37 L. R. A. (N. S.) 186.

The judgment is affirmed.

MITCHELL, C. J., PARKER, MAIN, and MILLARD, JJ., concur.