## STOCKGROWERS AND RANCHERS BANK OF RENO *v.* MILISICH ET UX

No. 2767 (See 52 Nev. 178)

### ON PETITION FOR REHEARING

September 5, 1930.

DUCKER, C. J.:

Appellant filed a petition for rehearing and in addition filed what is designated "Appellant's Closing Brief on Petition for Rehearing." Respondents filed a brief in reply to this. These briefs were filed without leave and in contravention of rule XV of this court which prescribes that no other argument shall be heard on a motion for a rehearing except such as may be contained in the petition therefor and the reply to said petition. In Rickey v. Douglas, 45 Nev. 341, we ruled that no other argument was permissible. We are always desirous of a full argument on an application for a rehearing but are not disposed to permit such

argument to proceed to the extent of ignoring or violating prescribed rules of procedure. If a practice of this kind is indulged, the rule will ultimately become more honored in the breach than in the observance. We must, therefore, discourage it, and while respondents' brief was perhaps justified by the filing of appellant's, we will order both to be stricken.

After a careful consideration of the case in connection with appellant's petition for a rehearing, we are impelled to deny it. Appellant practically admits that the judgment is unassailable in part. It is contended in the petition that the law of gifts inter vivos, as declared in the majority opinion, applied to the testimony of the husband and wife, will justify the judgment for the latter only to the extent of $8,000, this being her separate property interest in the O'Sullivan notes and mortgages. The basis of this claim, if we correctly understand appellant's contention, is in the assumption that as to the balance of the money and liberty bonds advanced by Thora to Steve for the O'Sullivan notes and mortgages, the evidence does not show delivery into that exclusive dominion and control of the donee which we held is essential to complete gifts inter vivos. We think the evidence tends to show this. It shows also, without dispute, that Steve never exercised any control over any of the moneys, bonds or thrift stamps claimed as gifts, which in part formed the consideration for the assignment of the O'Sullivan notes and mortgages in question. As to the Liberty bonds which the testimony shows he gave to his wife, and the notes and mortgages kept in the safety deposit box, it is true he had access to them and therefore had the opportunity to take possession of them. But he never did; and we are unwilling to say as a matter of law that the mere fact that he was not powerless to gain control of the gifts claimed will militate against their delivery as such. The test of delivery in such cases is not the physical inability of the donor to exercise control over the gifts alleged, but the presence of such facts as show the

donee has the legal right to exercise exclusive dominion and control. Hynes v. White (Cal. App.), 190 P. 836; In Re Boole's Estate (Wash), 219 P. 4. In the latter case the court quoted from one of its former decisions as follows:

"Again it is said that Mrs. Hubbard did not assume absolute control over the bonds until after her husband's death. But the evidence is that she put them in the place where valuables of this sort were usually kept, whether the individual property of either of them or the community property of both. The fact that Mr. Hubbard may have had access to the place of deposit does not argue that the property was not hers or was not under her dominion or control."

The same may be said in this case. The fact that prior to June, 1920, Steve had access to the safety deposit box where the Liberty bonds were kept, does not furnish a basis for an inference that there was not a prior delivery.

It is insisted that the jury found that only $1,000 of the loan of $5,000 evidenced by the O'Sullivan note of February 8, 1919, by its terms made payable to both Steve and his wife, Thora, was advanced from her separate estate, and that there is no evidence of any delivery of the $4,000, which both testified he gave her to make up the balance of the loan of $5,000. Both contentions are without merit. It is true that in two of their answers to interrogatories the jury said that $1,000 of this loan was advanced from her separate funds and none from the community funds. If the jury believed that Steve gave her $4,000, which he said he did by telling her to draw her check for that amount on the mutual checking account, they were correct in saying that no part of the loan of $5,000 was advanced from the community funds, and in error in saying that only $1,000 was advanced from her separate funds. That the jury so believed, and were in error as to the $1,000, are, we think, borne out by the following interrogatory and answer:

"Q. Did Mrs. Milisich pay $5,000 out for the second

O'Sullivan note and mortgage out of the moneys given her by her husband as her own separate property? A. Yes."

There is ample evidence showing the gift of $4,000 to Mrs. Milisich to make the $5,000 loan to the O'Sullivans. On this phase of the case Steve testified as follows:

"Mr. O'Sullivan asked her for $5,000 loan, and a second mortgage, and she spoke to me in the evening and I said, 'You could take that mortgage.' I said, 'Have you any money in the bank?' She said, 'I have some but not enough to take up the note.' I said, 'I will give you $4,000 to be yours. Tomorrow morning you can go to the bank and draw a check against my account for $4,000—not any more.' "

He testified that at the time, February, 1919, he owed no money and had a bank balance of $10,000.

Mrs. Milisich corroborates her husband in this respect. She further testified that she drew $1,000 from her savings account and placed it in the joint checking account, and on February 8, 1919, drew a check on the latter account for $5,000. When Mrs. Milisich checked the $4,000 out of the bank as Steve had authorized her to do, we can conceive of nothing else necessary to effectuate the gift.

The petition for a rehearing is denied, and it is further ordered that the briefs filed in contravention of the rule be stricken from the files.

COLEMAN, J., concurring:

I concur in the order denying the petition for rehearing for the reason which I gave when the case was first disposed of.

I also concur in the order striking the briefs filed upon the application for a rehearing for the reason given by the Chief Justice.

SANDERS, J.: I dissent.