[No. 23176. Department One. August 12, 1931.]

*In the Matter of the Estate of* JOHANNA LEVY,
*Deceased.*[1]

*Revelle, Simon & Coles,* for appellant.

*Long & Hammer,* for respondent.

PARKER, J.—Joseph Levy filed in the probate proceedings of the estate of his deceased wife, Johanna Levy, pending in the superior court for King county, his petition praying that all of the inventoried funds of her estate, consisting of approximately twenty-six thousand dollars, excepting the sum of two thousand five hundred dollars, be decreed to be his separate property and not subject to administration as part of her estate. The court issued a show cause order directed to the executor named in Mrs. Levy's will, and to the legatees therein named other than Mr. Levy. All of these parties submitted themselves to the jur-

[1]Reported in 1 P. (2d) 906.

isdiction of the court and resisted Mr. Levy's petition upon the merits.

The issue so made is simply as to whether the portion of the inventoried funds in the hands of the executor claimed by Mr. Levy is his separate property or a part of Mrs. Levy's estate and subject to administration as such. Upon this issue, the matter proceeded to trial in the superior court upon the merits by the introduction of evidence and argument of counsel in behalf of the respective parties. The court thereupon made findings of fact, and entered its final order thereon denying to Mr. Levy the relief prayed for by him, from which he has appealed to this court.

About the year 1907, Mr. Levy, having resided in Victoria, British Columbia, for many years, and there accumulated property of the value of some twenty thousand dollars, went to Alaska. Soon thereafter he there became acquainted with Johanna Brier. In 1913, he came to Seattle and soon thereafter went to Copenhagen, Denmark, taking with him some furs acquired by him in Alaska, with a view of disposing of them in Denmark. Mrs. Brier accompanied him. She had relatives in Denmark. They returned together to Seattle sometime later, and were there married on October 24, 1919.

Prior to their marriage, Mrs. Levy had acquired funds as her separate property amounting to twenty-five hundred dollars, which, at the time of the marriage, she had on deposit in a bank in Seattle. Mr. and Mrs. Levy, at all times since their marriage, kept separate bank deposit accounts, neither having any control over the funds so on deposit in the name of the other. In October, 1922, Mr. Levy turned over to Mrs. Levy five thousand dollars, which she deposited with her own funds in the Seattle bank. This became as absolutely under her control as were her separate

funds already so possessed by her. In February, 1926, Mrs. Levy deposited five thousand dollars additional with her own funds in the Seattle bank. The evidence suggests the probability that this was also turned over to her by Mr. Levy, though the evidence is not at all certain in that respect. However, this five thousand dollars became equally in her exclusive possession and control. Additional funds were deposited by Mrs. Levy from time to time in her bank accounts, one in Seattle and one in Denmark. The source of these additional funds is not shown.

In April, 1926, Mrs. Levy duly executed her will, reading, apart from the usual introductory and concluding clauses of such instruments, as follows:

"I devise and bequeath all of my estate, real and personal, to my executors and trustees hereinafter named, in trust for the purposes following:

"Firstly, to pay my just debts, funeral and testamentary expenses and thereafter in trust to dispose of and pay over or convey the same to the person or persons or corporations hereinafter named as follows:

"Secondly, to pay, as soon as conveniently can be done, to my beloved husband, Joseph Levy, the sum of five thousand dollars ($5,000).

"Thirdly, to invest and reinvest the remainder of my estate and out of the principal or income, to pay to, or for the care of my said husband, Joseph Levy, a monthly sum which in the judgment of my trustees is sufficient for his support and maintenance, so long as he may live.

"Fourthly, upon the death of my said husband, I hereby direct my trustee to distribute the remainder of my estate equally between the Orthopedic Hospital at Seattle, Washington, and Washington Children's Home Society, also of Seattle, Washington.

"I nominate, constitute and appoint the Dexter Horton National Bank of Seattle, to serve without bond, executor and trustee of this, my last will, with full power and authority to sell and dispose of all my

estate where necessary and execute any and all documents requisite to carry out this my will.''

On October 15, 1930, Mrs. Levy died in Seattle, that being the city of their residence during the period of their marriage. She was then sixty-four years old. He was then eighty-four years old. At that time she had savings bank deposits in her own name, absolutely under her control, amounting to approximately twenty-six thousand dollars. This, apparently, was all the property she then possessed of any substantial money value. At that time, Mr. Levy had on deposit in his bank account approximately five thousand dollars. As to what additional property he then had is not shown. Mr. and Mrs. Levy did not accumulate any community property during the period of their marriage relation.

On October 21, 1930, Mr. Levy tendered to the superior court for King county Mrs. Levy's will and petitioned that it be admitted to probate and established as her last will and testament, alleging in his petition in part as follows:

''That Johanna Levy died in Seattle, the county of King and state of Washington, on the 15th day of October, 1930, being at the time of her death a resident of Seattle, in the county of King, and state of Washington, and leaving estate in King county, state of Washington, consisting of her sole and separate property of the probable value of $26,000 subject to administration.''

On November 19, 1930, the executor filed an inventory of the property of the estate coming into its hands, showing it to consist of a saving deposit in the Dexter Horton National Bank amounting to $19,820.83, and cash received by the executor from her deposit in a Denmark bank amounting to $2,600. On February, 14, 1931, an additional inventory was filed by the

executor showing it to have received an additional sum from her deposit in the Denmark bank amounting to $3,712.44. The source of her acquiring these Denmark funds is not shown. No other property or funds has been inventoried by the executor. The record warrants the conclusion that she did not, at the time of her death, possess any other property of sufficient money value to warrant inventory or appraisement thereof.

It is contended in behalf of Mr. Levy that all of these inventoried funds, except twenty-five hundred dollars thereof, were placed by him in the hands of Mrs. Levy to hold in trust for him. It is contended in behalf of the executor and the legatees, other than Mr. Levy, that the whole of the inventoried funds was Mrs. Levy's separate property, that in no event was more than ten thousand dollars thereof turned over to Mrs. Levy by Mr. Levy, and that whatever portion of that sum was turned over to her by him constituted an absolute gift by him to her. The trial court found:

"That at the time of the death of said Johanna Levy all of the funds in the said account in Denmark and in the First Seattle Dexter Horton National Bank were the sole and separate property of the said deceased, and were not in any manner whatsoever held in trust by her for the petitioner, Joseph Levy. If any of the present assets of the estate of the said Johanna Levy were at any time during the life of said decedent the property of the petitioner, Joseph Levy, the same had been, prior to the death of said decedent, unequivocally transferred and given to the said decedent as her sole and separate property."

The trial court, we think, was fully warranted by the evidence as viewing, and evidently did view, the following facts to be established thereby:

(1) Whatever portion of the funds was turned over

by Mr. Levy to Mrs. Levy was thereby placed in her absolute, unrestricted possession and control.

(2) All of the funds in the possession and under the control of Mrs. Levy up to the time of her death, over and above ten thousand dollars, was at all times her sole and separate property, there being no evidence warranting the conclusion that any portion thereof was acquired by her from Mr. Levy.

(3) All of the inventoried funds were, at the time of Mrs. Levy's death, in her absolute, unrestricted possession and control and had been so in her possession at all times since the coming into possession of each item thereof.

(4) One of the officers of the executor bank testified to a conversation with Mr. Levy while they were discussing her will, just prior to its being tendered to the court for probate, as follows:

"Q. Now, you say you had some discussion with him about this money in Denmark and the savings account in the bank, what was the nature of this discussion? A. Mr. Levy expressed disappointment that his wife had only left him $5,000.00 and he made the statement that he had given her this money, most of it; he said at the time they were married, she had only $2,500.00; he did not say the money was his; he said he had given her most of it."

There is some evidence indicating that, upon some prior occasions, he had made statements somewhat inconsistent with this statement made to the officer of the executor bank, but such other statements seem to us not to be so clear and specific as this statement. The trial court was warranted in believing the statement made to the officer of the executor bank to be an express, conscious admission of Mr. Levy's real intent to give to Mrs. Levy all the money he had turned over to her.

(5) In addition to these facts, we have the allegations made by Mr. Levy in his petition, addressed to the superior court, for the establishment of the will, that she died leaving property ''consisting of her sole and separate property of the probable value of $26,000 subject to administration.'' While this allegation may not, of itself, be a conclusive admission of his gift to her of the funds in question, it seems to be a strong circumstance so indicating, in view of the fact that she had no other property.

We are of the opinion that the evidence preponderates in support of the trial court's findings and disposition of the matter in controversy. Our decisions in *In re Hubbard's Estate,* 115 Wash. 489, 197 Pac. 610, and in *In re Boole's Estate,* 126 Wash. 632, 219 Pac. 4, lend strong support to this conclusion.

The order of the superior court from which this appeal is taken, is affirmed.

TOLMAN, C. J., MITCHELL, MAIN, and HOLCOMB, JJ., concur.