[No. 23306. Department One. December 21, 1931.]

*In the Matter of the Estate of* ARCHIBALD PERRY ADAMS,
*Deceased.*[1]

*John J. Kennett,* for appellant.

*Paul Shaffrath* and *Benton Embree,* for respondent.

PARKER, J.—This is a controversy between Nellie Blanche Liptau, as executrix of the last will and testament of Archibald Perry Adams, deceased, administering his separate estate, and Minnie F. Adams, as administratrix of the estate of the community composed of herself and Archibald Perry Adams, deceased. While these estates are being separately administered, they are both being administered in the one probate proceeding, entitled "In the Matter of the Estate of Archibald Perry Adams, Deceased," pending in the superior court for King county.

The administratrix of the community estate, in her inventory thereof, asserted a claim of lien in favor of that estate against residence property, consisting of a lot and dwelling house thereon, situated in Seattle, which was at all times in question the separate property of the deceased. The executrix of the separate estate thereupon filed in the probate proceeding her petition asking adjudication of the lien claim, and the freeing of the title of the separate property therefrom. The administratrix of the community estate responded, seeking the establishment of the lien claim in favor of the community estate against that property of the separate estate.

The controversy, being of equitable cognizance, came regularly on for trial in the superior court, sitting without a jury, which hearing resulted in a decree adjudicating the residence property to be the property of the separate estate of the deceased, free from the claim of lien made in behalf of the community estate. From this decree, the administratrix of the community estate has appealed to this court.

The controlling facts of this controversy, in so far as need be here noticed, we think, may be sufficiently summarized as follows: .

Archibald Perry Adams and Minnie F. Adams were married on January 29, 1923. At that time, and for some years prior thereto, Mr. Adams owned, in his separate right, the residence property here in question. They immediately commenced to reside and make their home in that residence property, and continued to do so up until Mr. Adams' decease, which occurred on May 25, 1930. During that marital period nothing occurred making any change or any impairment in Mr. Adams' separate, unencumbered ownership of that residence property, unless it be the payment of taxes thereon with community funds of Mr. and Mrs. Adams and the making of improvements thereon at the expense of the community of Mr. and Mrs. Adams, as claimed by the administratrix of the community estate.

In addition to Mr. Adams' separate ownership of the residence property at the time of their marriage, he then owned, in his own separate right, credits on savings accounts in Seattle banks aggregating more than $2,700.

During the marital period, Mr. Adams was constantly employed at a salary of $125 to $150 per month, the larger part of which was apparently consumed in their living expenses. During that period, Mr. Adams managed the financial affairs of the community as well as his separate financial affairs.

During the years of that period, there was paid by Mr. Adams taxes on the residence property aggregating $522. In 1927, Mr. Adams caused to be installed in the residence a new toilet, paying therefor seventeen dollars. In 1927, Mr. Adams caused the foundation of

the house to be repaired and a very small sun room added to the house, paying therefor one hundred dollars. In 1928, Mr. Adams caused the house to be painted, paying therefor one hundred dollars. In 1929, Mr. Adams caused a new covering to be put upon the roof, paying therefor $124. Whatever additional money was spent in improvement or repair of the property was evidently small in amount. We have here no evidence of any specified amount of money being so expended.

Some other things were done to the house and yard, looking to keeping the place in good, livable condition. These things seem to have been done largely by the labor of Mr. and Mrs. Adams themselves, and, while some of them may be considered of permanent improvement character, they are, for the most part, of but small moment. We have no evidence of the value of any of them, measured in money.

There is no evidence in this record showing affirmatively whether any portion of the above noticed payments made by Mr. Adams for taxes and improvements was made from his separate funds or from the community funds of himself and Mrs. Adams.

■ The lien claim of the administratrix of the community estate against the residence property of the separate estate rests upon the theory that the separate residence property was permanently improved at the expense of the community during the marital period of Mr. and Mrs. Adams. Passing the question of the permanency of the improvements to the residence property, it seems plain to us that the evidence calls for the conclusion that, during the whole of the marital period, Mr. Adams was amply able to pay from his separate funds for all that was expended by him in the improvement or repair of the house, and there is no

evidence in this record affirmatively showing that he did not make those payments from his own separate funds.

We have held in at least three of our decisions that, under such circumstances, the presumption is that similar payments under similar circumstances are made from the separate funds of the spouse so making the payments. *Guye v. Guye,* 63 Wash. 340, 115 Pac. 731, 37 L. R. A. (N. S.) 186; *In re Finn's Estate,* 106 Wash. 137, 179 Pac. 103; *Rogers v. Joughin,* 152 Wash. 448, 277 Pac. 988. This presumption, we conclude, is controlling of the merits of this controversy favorable to the executrix of the separate estate of Mr. Adams. It follows that this residence property of his separate estate is not subject to the lien claim made in behalf of the community estate.

The decree is affirmed.

TOLMAN, C. J., BEELER, HERMAN, and MITCHELL, JJ., concur.