In the Matter of the Judicial Settlement of the Accounts of THOMAS J. O'CONNELL and MATTHEW SEYMOUR, as Executors of the Last Will and Testament of WILLIAM J. SEYMOUR, Deceased.

JAMES SEYMOUR, Appellant; THOMAS J. O'CONNELL and MATTHEW SEYMOUR, as Executors of the Last Will and Testament of WILLIAM J. SEYMOUR, Deceased, Respondents.

*Gift* inter vivos *from one since deceased — proof necessary to establish it as against the decedent's estate.*

In order to establish title to property through a gift *inter vivos,* from one since deceased, as against his estate, evidence thereof of great probative force must be furnished, clearly establishing every element of a valid gift — viz., that the decedent intended to divest himself of the title in favor of the donee, and accompanied his intent by a delivery of the subject-matter of the gift.

APPEAL by James Seymour from a decree of the Surrogate's Court of the county of Cayuga, entered in said Surrogate's Court on the 13th day of May, 1897, denying the appellant's motion to surcharge the account and inventory of the respondents with the value of a horse known as " Ontario Chief."

*Frank Rice,* for the appellant.

*Amasa J. Parker,* for the respondents.

FOLLETT, J. :

He who attempts to establish title to property through a gift *inter vivos* as against the estate of a decedent takes upon himself a heavy burden which he must support by evidence of great probative force, which clearly establishes every element of a valid gift, viz., that the decedent intended to divest himself of the title in favor of the donee and accompanied his intent by a delivery of the subject-matter of the gift.

It is conceded that in 1887 the decedent purchased a colt, then about six months old, of the Rev. James J. O'Connell, which was subsequently known as " Ontario Chief." The decedent, William J. Seymour, was a Catholic priest residing for many years at Auburn, N. Y., who died March 5, 1895, at San Antonio, in the State of Texas. In December, 1894, the testator was seriously ill, and on

the sixth of that month he executed his last will, and on the eighth left for Texas, where he died. His will was probated March 18, 1895, and letters testamentary issued thereon to Matthew Seymour, his brother, and Thomas J. O'Connell, a Catholic priest. Dennis Seymour, a brother of the testator, asserts that "Ontario Chief" was given by the testator to James Seymour, a son of Dennis, in 1888, who subsequently gave the horse to him. The only question involved in this appeal is, whether the horse belongs to the testator's estate or to Dennis Seymour. The evidence most clearly shows that, until the testator left Auburn in December, 1894, for Texas, he mainly had charge of this horse and used him as a carriage horse. The principal fact relied on to support the title of Dennis Seymour is, that, in 1891, the horse was advertised for service under the name of "Dennis Seymour, owner." It appears, however, that this advertisement was prepared by the testator and his brother, and that the horse was advertised for service at the farm of Dennis Seymour. The testator was a Catholic priest and lived in the city, and could not have conveniently taken charge of a horse advertised for service, while his brother Dennis was a farmer and could. In December, 1892, the testator took the horse to a veterinary surgeon by whom an operation was performed, and the horse was kept for twenty-five days until December 28, 1892, when the testator paid the bill. In March, 1893, the horse was in the possession of the testator and used as a carriage horse, and the testator offered to sell him. September 6, 1893, the testator delivered the horse to one William Morris to be trained, who kept him for fifty-two days, and the testator paid the bill. In November, 1894, shortly before the testator left for Texas, the horse was in his possession, and he offered to sell him to Michael P. Conway. When the testator left for Texas the horse was taken to the farm of his brother Matthew, who was one of his executors, and not to the farm of Dennis, who claims the horse then belonged to him. If this horse had belonged to Dennis for several years, why was it delivered by the testator, when he left for Texas, to his brother Matthew, who retained it in his possession until after the death of the testator?

It seems to me that the evidence in this case, saying nothing about the legality of some of it, relied upon by the respondents, falls far short of showing that this horse was given and delivered by the

testator to James Seymour, his deceased nephew, or to any one else. The testator is the only person who is shown to have used and exercised absolute control of the horse down to December, 1894, when the testator left for Texas, where he died.

It seems to me that the findings of the Surrogate's Court are not sustained by the weight of evidence, and that its decree should be reversed, the findings of the referee affirmed, and the Surrogate's Court directed to charge the account of the executors with this horse, and that the appellant be awarded the costs of this appeal and of the proceedings in the Surrogate's Court, payable out of the estate.

All concurred, except HARDIN, P. J., not voting.

Decree of the Surrogate Court, so far as appealed from, reversed, and the findings of the referee affirmed, and the Surrogate's Court directed to charge the account of the executors with the value of the horse, and that the appellant be awarded costs of this appeal and of the proceedings in the Surrogate's Court, payable out of the estate.