(25 Misc. Rep. 586.)

### In re MUNSON et al.

#### (Surrogate's Court, Otsego County. December, 1898.)

**1. GIFTS INTER VIVOS—DELIVERY.**

Where a father let his farm to his son, to work on shares, and prior to his death sold certain of the personal property thereon, which he replaced with other property purchased, and the son, as executor of his estate, afterwards mortgaged part of such property to secure an indebtedness of the estate, evidence of deceased's declarations that he had given such property to his son is insufficient to establish a valid gift thereof inter vivos, there being no evidence of deceased's intention to devest himself of title, and that it should pass irrevocably to the son.

**2. ESTATES—CLAIMS—PRESUMPTION.**

Where a son worked his father's farm on shares prior to his death, produce furnished him will be presumed to have been delivered under the contract, in the absence of evidence to the contrary, and will not be allowed as the basis of a claim against the estate.

**3. SAME—FAILURE TO PRESENT—LACHES.**

The owner of a farm contracted to support an imbecile for life, and afterwards removed from the farm, leaving it in his son's possession, the imbecile remaining as a member of the son's family. Twelve years after the imbecile's death, and six years after the death of his father, the son, for the first time, presented a claim against the father's estate for the care of the imbecile. *Held*, that the claim should be rejected.

**4. SAME—DAUGHTER'S SERVICES—RECOVERY.**

Where the evidence was sufficient to show that a daughter was warranted in believing that her father intended to pay for her services rendered him while infirm, preceding his death, she is entitled to recover therefor against his estate.

**5. SAME—CLAIM AGAINST LEGATEE—LIMITATIONS.**

The fact that a claim against a legatee is barred by limitations does not prevent its deduction from his share of the estate.

**6. WILLS—CONSTRUCTION—CLAIMS AGAINST LEGATEE—DEDUCTION.**

Decedent devised his property to his wife for life, and on her death to be divided among his six children for life, and declared that the share of any child shall not be liable for, or in any manner incumbered by, any old debt or claim against such child. *Held*, that a note given by a child to the father could not be deducted from his share of the estate.

Judicial accounting by Ainer Munson and Josephine McMinn Bowen, executors of the estate of John H. Munson, deceased.

L. F. Raymond (E. H. Hanford, of counsel), for Ainer Munson.

J. Lee Tucker (A. C. Tennant, of counsel), for Josephine McM. Bowen, John H. Munson, Jr., and Clarence McMinn.

H. J. Williams (W. H. Johnson, of counsel), for Milton D. Munson and Evalyn Walker.

A. L. Kellogg, for Albert H. Munson.

A. R. Gibbs, for B. W. Hoye.

Douglas W. Miller, for infants interested in estate.

ARNOLD, S. John H. Munson died in the village of Oneonta, N. Y., in January, 1891; leaving a last will and testament, in which he appointed his son, Ainer Munson, and his daughter, Josephine McMinn, executors thereof. In these proceedings for the judicial settlement of

the accounts of the executors, various questions are presented: First, Ainer Munson presents an individual claim against the estate for the sum of about $2,200; second, Josephine McMinn Bowen presents a claim for about $1,500; third, it is sought to surcharge the account of the executor, Ainer Munson, with the value of certain personal property; and, fourth, it is sought to charge the share of M. D. Munson with a note held by the estate. The evidence offered does not throw a very strong light upon any of the questions here for decision, and upon some of them the light is so dim as to leave the court almost in darkness.

It should, perhaps, first be determined of what the estate of John H. Munson consisted at the time of his death. It is admitted by all parties that he was the owner of a farm of about 200 acres, situate in the town of Franklin, Delaware county, N. Y., and that he was the owner of an undivided two-thirds interest in a house and lot in the village of Oneonta. These properties have been sold in an action in partition, and it appears that the proceeds of the sale amounted to about $4,779.06; that this sum is in the hands of the county treasurer, awaiting distribution pursuant to the decree entered upon this accounting. It is also urged by the interested parties, excepting Ainer Munson and Josephine McMinn Bowen, that John H. Munson was at the time of his death the owner of certain personal property upon the farm in the town of Franklin. It appears from the evidence that in 1882 John H. Munson and his wife removed from this farm to the village of Oneonta, and that he continued to reside in the village of Oneonta from that time until the time of his death, in 1891; that at the time he removed to Oneonta there were upon the farm cows, horses, sheep, swine, farming implements and utensils, necessary and common to the conduct of a farm of that size according to the methods of farming in that community, and that this property belonged to John H. Munson; that he left his son, Ainer Munson, in possession of the farm and personal property. And I have found that from that time down to the time of the death of John H. Munson the said Ainer Munson continued in possession, working the said farm upon shares. It appears that in the fall of 1882 John H. Munson held an auction upon said farm, and sold some of the personal property. It also appears that John H. Munson paid for certain other personal property which was afterwards put upon the farm; that about a month after his father's death, in 1891, Ainer Munson borrowed some money from J. W. Gibson with which to pay some estate indebtedness; that at that time he gave a note to said Gibson signed by himself as executor of John H. Munson's estate; that at the same time, and as collateral security for the payment of said note, he made, executed, and delivered to said Gibson a chattel mortgage upon 21 cows.

Upon the foregoing facts the contestants claim that the executor Ainer Munson should be charged with the value of the personal property. Upon the other hand, witnesses were produced who testified that at different times they were told by John H. Munson that he had given the personal property upon the farm to Ainer. Is the

evidence sufficient to support a finding of a valid gift of this property?

In the recent case of In re O'Connell, 33 App. Div. 483, 53 N. Y. Supp. 748, Mr. Justice Follett, in writing the opinion of the court, says:

"He who attempts to establish title to property through a gift inter vivos, as against the estate of a decedent, takes upon himself a heavy burden, which he must support by evidence of great probative force, which clearly establishes every element of a valid gift, namely, that the decedent intended to devest himself of the title in favor of the donee, and accompanied his intent by a delivery of the subject-matter of the gift."

In the case at bar the property was in the actual possession of Ainer. If there had been a gift, the possession would not have changed. But the authorities all unite in saying that a gift inter vivos must be complete. The donor "must devest himself of all dominion over the thing given, and the title to it must pass absolutely and irrevocably to the donee." Curry v. Powers, 70 N. Y. 212; Beaver v. Beaver, 117 N. Y. 421, 22 N. E. 940; Institution v. Hathorn, 88 Me. 122, 33 Atl. 836; Young v. Young, 80 N. Y. 422. So far as the evidence shows, the conditions remained the same from 1882 down to the time of John H. Munson's death. Apparently he received the same from the farm and the dairy, etc., during all that time. The executor Ainer Munson has not shown that there was any change of dominion over the thing claimed to have been given. Any gift of chattels which expressly reserves the use of the property to the donor for a certain period, or as long as the donor shall live, is ineffectual. 2 Schouler, Pers. Prop. 118; Day v. Roth, 18 N. Y. 448. It appears from the evidence that Ainer bought three cows some time during his occupation of the farm, and he is allowed for them in the findings; but I am unable to find a valid gift of the personal property on the farm to him, and he is charged with the value of what was remaining there at the time of John H. Munson's death. As to the claim presented by Ainer for wood, hay, produce, etc., delivered to John H. Munson at Oneonta, it must be presumed that this was delivered pursuant to the share contract, and his claim must be disallowed.

So far as the claims of Ainer exist, there still remains for consideration his claim for the care of one Judson R. Beardsley from April, 1882, to the time of Beardsley's death, in February, 1885. It appears from the evidence that Judson was a foolish fellow; that back in the early 60's the father of Judson gave to John H. Munson the sum of $2,000, to pay him for the care and support of Judson so long as he should live. When John H. removed to Oneonta, Judson was left upon the farm, and he constituted one of the family of Ainer Munson the remainder of his life. Upon what terms he was left upon the farm, does not appear from the evidence. But it does appear that a period of almost six years elapsed from the time of Judson's death to the time of the death of John H. Munson. So far as it appears, no claim was ever made by Ainer for the care of Judson R. Beardsley until about the year 1897; and, upon the evidence, I am unable to find that John H. Munson was indebted to Ainer in any amount at the time of his death.

When John H. Munson moved to Oneonta, he and his daughter, Josephine McMinn, purchased a house and lot, and took the title to themselves as tenants in common; he taking an undivided two-thirds, and she an undivided one-third. From that time until the time of his death the family consisted of John H., his wife, Mrs. McMinn, and her son. About four years before his death John H. Munson suffered a stroke of paralysis, and from that time until the time of his death his left side was paralyzed. At various times he was confined to his bed, and during all of the time had to be dressed and undressed, assisted in moving about, and required a great deal of care and attention. Most of the care given and the services rendered in attending to him were given and rendered by his wife and his daughter, Josephine. Josephine now presents a claim for services. The general rule of law is that when one person renders services to another with the expectation of being paid therefor, and the latter has reason to know that the former was acting with that expectation, the acceptance of the services amounts to a promise by the party accepting them that he will pay the reasonable value of such services. But the general presumption that the acceptance of a benefit implies a promise to pay for it does not exist where the person conferring the benefit is a member of the same family with the person receiving it. In this case Josephine McMinn is not entitled to the general presumption. In order to maintain her claim against the estate for the services rendered, it must appear that the circumstances were such as to entitle her to believe that John H. Munson intended to pay her for her services. The proof is abundant to sustain such a finding, and I have found accordingly. As to the value of her services, I do not think that she is entitled to the amount claimed by her. She was a member of this family, living in the house, and conducting a profitable business on her own account during all this time. She did not render all the services rendered in the care of this man. In the findings filed herewith, I have allowed her what seems to me a fair and reasonable compensation, under all the circumstances of the case.

There yet remains for determination a note for $200 made by Mary J. Munson and Milton D. Munson, payable to the order of John H. Munson, dated December 18, 1880, due by its terms two years from date. On the back of this note is an indorsement of payment on account September, 1883, and December 27, 1889. The makers of the note claim: (a) That the note was given to them by the testator before his death, and that he waived all his rights on account thereof; (b) that the note is outlawed. The evidence on this point does not establish a valid gift, in my opinion. Neither do I think that the statute of limitations is a defense in this proceeding. 2 Williams, Ex'rs, 619; In re Bogart, 28 Hun, 466; Rogers v. Murdock, 45 Hun, 30; In re Foster's Estate, 15 Misc. Rep. 175, 37 N. Y. Supp. 36. By the terms of the will the testator—First, gives the life use of all his property to his wife; second, upon the termination of her life estate, he directs that his property shall be equally divided among his six children, each child to have the use, custody, and control of the one-sixth part of said estate for and during his natural life; third,

upon the death of any of his said children, he gives and bequeaths unto the heirs of the body of said child the said one-sixth part forever. By the fifth clause of his will he directs as follows:

"Fifth, the part or share which any of my children shall be entitled to take a life interest of, in and to my estate, shall not in any way be liable to be seized, taken, or in any manner incumbered by any old debt or claim against any or either of my said children."

It would appear from the evidence that the testator had advanced more or less money to the majority of his children; and, while it might have been possible for the executors here to have recovered upon this note, if an action had been brought before the statute of limitations had run, I do not think that under this provision of the will I can allow the amount of this note to be taken from the life use which M. D. Munson has in the undivided sixth of testator's estate. A decree may be entered accordingly.