## JIMPSON v. CHANDLER et al.

No. 3824.   Decided February 10, 1923.   (212 Pac. 1113.)

1. TRUSTS—CLEAR EVIDENCE NECESSARY TO ESTABLISH PAROL TRUST. Evidence to establish a trust resting on parol should be clear and expressive and not conflicting in character as to material points.[1]

2. TRUSTS—PARTICULAR WORDS NOT REQUIRED TO ESTABLISH PAROL TRUST. No particular words are required to establish a parol trust.

3. TRUSTS—EVIDENCE HELD TO ESTABLISH HUSBAND'S INTENTION TO MAKE GIFT BY DEPOSIT ON BEHALF OF WIFE. Evidence of statements made by plaintiff's husband at the time he took a certificate of deposit in which it was certified that he or a foster son had deposited a named sum, and that it was payable to the "order of either or survivor," together with subsequent acts, *held* to establish that he intended to make a gift of his equitable interest in the money on behalf of his wife.

4. APPEAL AND ERROR—FINDING OF COURT ON CONFLICTING EVIDENCE NOT DISTURBED ON APPEAL. The finding of the trial court on conflicting evidence will not be disturbed on appeal, where there was some evidence to support it.

Appeal from District Court, Third District, Salt Lake County; *Ephraim Hanson,* Judge.

Action by Mina L. Jimpson against George B. Chandler and the Bingham Coal & Lumber Company. From a judgment for plaintiff against defendant Bingham Coal & Lumber Company, it appeals.

AFFIRMED.

*Cheney, Jenson, Holman & Stephens* and *W. H. Bramel,* all of Salt Lake City, for appellant.

*Van Dam & Draper,* of Salt Lake City, for respondent.

[1] *Skeen* v. *Marriott,* 2 Utah, 73, 61 Pac. 296.

GIDEON, J.

By her complaint Mina L. Jimpson sought judgment against George E. Chandler and the Bingham Coal & Lumber Company for money alleged to be held in trust for her. The court entered judgment against the defendant lumber company. The action was dismissed as against Chandler. The lumber company appeals.

Plaintiff is the widow of one John Jimpson, Sr., now deceased. Isadore M. Gauchat is her son, and consequently the stepson of Jimpson, Sr.

There is no serious dispute respecting the facts involved in the legal question to be determined by this court. It appears that in January, 1912, John Jimpson, Sr., had on deposit in an open or checking account in the State Bank of Bingham, in Bingham, Utah, money in excess of $6,000. On January 17th of that year $5,000 of that amount was withdrawn from the bank, and a time certificate issued therefor. It is certified in the certificate that John Jimpson, Sr., or I. M. Gauchat had deposited in the bank $5,000, and that the same was payable to the "order of either or survivor." The testimony of Mr. Gauchat as to what was said and done leading up to the issuance of the first certificate of deposit, as appears in the bill of exceptions, reads:

"Q. Just state what was said and what was done there. A. Mr. Jimpson asked me to accompany him to the bank, that he wanted to make a transfer of a portion of his checking account into some form for mother's care and maintenance. I accompanied him to the bank, and in the presence of Mr. Koehler and Miss Louise Berry Mr. Jimpson asked Mr. Koehler's advice as to what form he should put a portion of that money into so as it would be available for mother's future use and not necessarily with her knowledge. Mr. Koehler suggested this form of certificate of deposit. He says, 'You have confidence in Isadore?' 'Yes.' 'Well, I know of no other or better form that occurs to me than to put it in a certificate of deposit, payable to you or Isadore for her care and maintenance in old age." And consequently $5,000 was taken from the checking account and placed into his certificate of deposit upon the order."

Mr. Koehler, cashier of the bank, testified respecting this same transaction as follows:

"Q. Who did participate in the conversation at the time of this transaction? A. Mr. Jimpson, Mr. Gauchat, and myself. Q. You may state what was said by the respective parties. A. The question was asked of the best way to put this money so as to protect Mrs. Jimpson in the event of death. Q. And who asked that question? A. Mr. Jimpson, Sr. * * * Q. Did Mr. Jimpson say why he wanted the certificate put in that particular form? A. He wanted it to protect Mrs. Jimpson in the event of his death, so that she would be protected for the use of the money without going through the probate. Q. And that is what he said? A. Yes, sir. Q. Do you recall anything else that was said at that time respecting the transaction? A. No; I couldn't say that I do. It is only suggestions that I made in regard to putting the certificate in this form to take care of that emergency."

Apparently the certificate was left in the custody of Mr. Gauchat. In January, 1913, this certificate was surrendered and a new certificate was issued, worded the same as the former certificate, except as to the date. On or about October 27, 1914, this second certificate was surrendered to the bank, and the money withdrawn. It was then loaned to the defendant Bingham Coal & Lumber Company. At least it so appears on the books of the lumber company. That loan was repaid on August 25, 1915, at which time the amount was again deposited in the same bank by Jimpson, Sr., and said Gauchat, and another certificate of deposit issued in the same words as the certificate of January 17, 1912, except as to the date. This last certificate was not transferred to any one until July 12, 1917. On this date Isadore M. Gauchat indorsed the certificate and delivered it to the defendant George E. Chandler, president of the lumber company. The certificate was paid by the bank, and the amount credited by the lumber company on an antecedent debt that Gauchat owed that company. Gauchat had been an employé of the defendant lumber company constantly from the year 1901 until June, 1917.

The trial court found that the deposit made in January, 1912, for which the certificate was issued, was for the use and benefit of the plaintiff, and that said Jimpson by such deposit made and constituted himself and the said Isadore M. Gauchat, either or survivor, trustees of the said fund for

the use and benefit of said plaintiff; that Jimpson had so declared at that time to the cashier of the bank; that the certificate was renewed in the same form at the same bank as herein set out. The court further found, however, that the said John Jimpson, Sr., was not the owner of the entire $5,000, but that he did own in his own right one-half of that amount, to wit, $2,500.

It seems to be agreed by counsel for both sides in the argument—and in this we agree—that the crux of this case is whether a trust was created in favor of the plaintiff at the time of the withdrawal of the fund from the checking account of Jimpson in January, 1912.

It is insisted by appellant that the proof does not establish the creation of a trust, and that there can be no reasonable deductions drawn therefrom which will support the finding of the court. The opinion of this court in *Skeen* v. *Marriott*, 22 Utah, 73, 61 Pac. 296, is relied upon in support of that contention. The principle or rule stated in that opinion at page 89 respecting the quality of testimony necessary to establish a parol trust in personal property is quoted, and it is argued that the testimony in this case does not measure up to the standard as there outlined. In that case the court said:

"It is absolutely essential that the evidence to establish a trust resting on parol should be clear, unequivocal and explicit, and not conflicting in character, as to material points, for if the terms and object of such a trust be left in doubt or confusion a court cannot enforce it. No particular form of words, however, is requisite in the creation of a trust, nor for a person to declare himself a trustee. If the owner of personal property transfers it to one person for the use of another in definite and positive terms, or if such owner unequivocally declares, in writing or orally, that he holds it in præsenti in trust for another person, in either case the trust will be upheld. In either of such cases the trustee is liable and must account to the cestui que trust."

That general statement as to the quality of testimony requisite to establish a parol trust in personal property has the unanimous support of the authorities. Numerous cases are cited by appellant in effect stating the same rule. The question here to be determined is, Does the proof in this

case meet such requirements? No particular words are required to establish a trust such as is sought to be enforced in this case. There must be unequivocal, explicit statements, or acts which go to establish such a trust. That **2** at least $2,500 of the money in the bank was the property of John Jimpson, Sr., is not seriously questioned, although there was some effort on the part of the defendant to show that the money was not Jimpson's property. That Jimpson was desirous of so arranging his affairs that this money would be available for his wife's use is equally well established not only by what he said, but by his acts after making this deposit in January, 1912. That he adopted this particular method to carry out that intent is likewise conclusively proven. Apparently there was no doubt in the mind of either the stepson, Gauchat, or Koehler, the cashier of the bank, that such was his intent. All the subsequent acts of Jimpson after the issuance of the certificate of deposit in 1912 with reference thereto were in keeping with such intent. When the certificates of deposit were renewed they were always made payable to the same parties in the same way as was the original certificate. "Whether a trust exist or not is usually a question of fact to be established or disapproved by evidentiary facts." *Cazallis* v. *Ingraham*, 119 Me. 250, 110 Atl. 363. Every case must therefore be determined in the light of the particular facts and circumstances appearing in that case. The testimony in this record, in our judgment, is "unequivocal and explicit" that a trust was created in favor of the plaintiff as determined by the trial court.

That a trust can be declared without the knowledge of the donee and without the donor losing control and management of the property seems to be supported by the authorities. "Notice to the beneficiary of the establishment of a trust is unnecessary," etc. *Cazallis* v. *Ingraham*, supra, and cases there cited.

In *Norway Sav. Bank* v. *Merriam*, 88 Me. at page 151, 33 Atl. at page 841, the Supreme Court of Maine, in discussing a question similar to the one here involved, says:

"But while delivery and surrender of possession are not neces-
sary in the creation of such a trust as is here sought to be main-
tained, there must be other acts which are so far equivalent as the
nature of the transaction will permit. A perfect or completed trust
is created where the donor makes an unequivocal declaration, either
in writing or by parol, that he himself holds the property in trust
for the purposes named. He need not in express terms declare him-
self trustee, but he must do something equivalent to it, and use
expressions which have that meaning. To create a trust, the acts
or words relied upon must be unequivocal, implying that the person
holds the property as trustee for another. There must be an exe-
cuted gift of the equitable title without any reference to its taking
effect at some future time.".

See, also, *Russell's Executor's* v. *Passmore*, 127 Va. 475,
103 S. E. 652.

The statements made by the deceased, Jimpson, at the
time of taking the certificate of deposit in January, 1912,
together with the subsequent acts, in our judgment, con-
clusively establish that he intended thereby to make a gift
of his equitable interest in the money mentioned in
this certificate in behalf of the plaintiff. It is equally      **3**
clear that the witness Gauchat and the cashier of the
bank so understood his intent at that time. The cashier,
by suggesting the form of the certificate, was assisting in
carrying into effect that intent or desire on the part of
Jimpson.

There is testimony in the record tending to establish the
fact that the president of the defendant lumber company
at the time he received the certificate of deposit knew of
the trust nature of the fund. The witness Gauchat testified
positively that he stated to the defendant Chandler that the
money covered by that certificate belonged to his mother,
plaintiff herein. It is true that testimony is categorically
denied by Chandler. However, the subsequent acts of Mr.
Chandler lend at least some support to the testimony of
Mr. Gauchat. After the death of Jimpson, Sr., Mr. Chandler
had prepared by a firm of lawyers in Salt Lake City an
"agreement," which he handed to Mr. Gauchat, and re-
quested that he and his mother execute such paper. It is
recited in the preamble of that agreement that Gauchat was

indebted to the lumber company, that he had indorsed and turned over to the company a certificate of deposit (the certificate herein referred to) and that the same had been credited to the account of Isadore M. Gauchat, and it then further recites:

"Whereas, it is claimed that J. Jimpson in his lifetime and Mrs. Mina Jimpson, his wife, have an interest in said money, and both of the parties of the first part desire that the said moneys so collected shall be applied upon said account."

That agreement was never executed. It is, however, evidence of the fact that the official of the defendant lumber company knew from some source or was impressed with the information that this plaintiff had some interest or claim in the money covered by this certificate of deposit.

The assignments of error assail only the fourth finding of fact of the court. The substance of that finding has already been stated.

Respondent has by cross-assignment challenged the finding of the court that one-half of the $5,000 represented by the certificate of deposit was the property of Gauchat. The evidence respecting that matter is in conflict, but there was some evidence to support the court's finding. We are not satisfied that the evidence warrants this court in overruling the trial court's finding in that regard.

Finding nothing in the record authorizing a reversal, the judgment of the district court is affirmed at appellant's cost.

WEBER, C. J., and THURMAN and FRICK, JJ., concur.

For the reason that the term of office of the Hon. E. E. CORFMAN, who was Chief Justice, expired after the presentation and submission of the foregoing case at the October, 1922, term, and that the opinion was filed after his retirement from office, his name is omitted from the opinion.