## CHRISTENSEN v. OGDEN STATE BANK et al.

No. 4858. Decided January 13, 1930. (286 P. 638.)
Rehearing Denied April 8, 1930.

*Pratt & Pratt* and *De Vine, Howell, Stine & Grilliam*, all of Ogden, for appellants.

*Thatcher & Young*, of Ogden, for respondent.

ELIAS HANSEN, J.

This is a controversy over a savings deposit account in the Ogden State Bank. Plaintiff claims that the account belongs to him. The interveners, Ogden State Bank as executor of the will of Jens Christensen, deceased, and Eliza M. Christensen, the surviving widow and a legatee of the deceased, claim that the savings deposit account is a part of the estate of Jens Christensen, deceased. Defendant Ogden State Bank in its individual capacity makes no claim to the account except as a depositary. Upon issues joined by the pleadings a trial was had to the court sitting without a jury. The trial resulted in a judgment whereby the savings deposit account was awarded to plaintiff. The interveners appeal. By their assignments of error interveners question the sufficiency of the evidence to support the findings of fact, conclusions of law, and judgment.

These facts are established beyond dispute:

Jens Christensen died June 23, 1927, at Ogden, Utah. He left a last will and testament in which the Ogden State

Bank was named as executor. The will has been admitted to probate, and the bank has been appointed executor. The will bears date of May 9, 1924. By its terms Eliza M. Christensen, one of the interveners, is to receive one-third of all of the property left by deceased; $1 is bequeathed to Peter Christensen, a half-brother, and $1 to Hilda Moyes, a half-sister of deceased. The remainder of the property belonging to deceased at the time of his death is devised and bequeathed one-half to Antone Christensen, plaintiff herein, and one-half to the living issue of Anna Matilda Ceister, a deceased sister of deceased. Jens Christensen was married twice, but there are no children of either marriage. Eliza M. Christensen was his second wife. They had been married slightly more than ten years when Jens Christensen died. On January 4, 1927, Jens Christensen had a savings account in the Ogden State Bank in the sum of $13,471.69. No further deposits were added to that account and there were no withdrawals therefrom after January 4, 1927. At the time of his death Jens Christensen left an estate of real and personal property of the value of between six and seven thousand dollars exclusive of the savings account here in question. Prior to April 18, 1927, the savings account stood in the name of Jens Christensen. The bank issued a passbook to Jens Christensen in which he was credited with his deposits and charged with his withdrawals. The following words appear in the passbook above various deposit credits: "In account with Jens Christensen, No. 25695. Savings Department of the Ogden State Bank, Ogden, Utah. This book is accepted and all deposits are made subject to the By-laws of the Bank as herein printed and made a part of this deposit contract. No payments can be made or money withdrawn without presentation of this book."

The by-laws printed in the passbook, so far as material to the questions here presented for review are as follows: "Depositors cannot receive either principal or interest without producing their pass books, but payments may be made to a third person upon presentation of the depositor's writ-

ten order and his pass book. *Notice.* This account and pass book is not negotiable nor transferable. When a pass book has been lost immediate notice must be given to the bank, and the bank may prescribe the conditions on which a new book may be issued. Deposits made by married women or minors cannot be drawn by their husbands, father or guardians except upon the written order of the depositor and the presentation of this pass book. * * * All savings deposits shall be made subject to the above conditions."

On March 17, 1927, Jens Christensen was taken to the Dee Hospital at Ogden, Utah. At the time he entered the hospital he was 73 years of age and was suffering from anemia, malignant endocarditis, and arthritis of the lumbar vertebrae. He remained in the hospital until May 3, 1927, when he was removed to his home in the hopes that he would improve by the change. On June 12, 1927, he was again removed from his home to the hospital for further treatment. He remainder in the hospital until June 16th, when he was again removed to his home. He died at his home on June 23, 1927. A few days before April 18, 1927—the exact date not appearing—John K. Spiers received word from Matthew H. Wheelwright that Jens Christensen desired to talk with him. Spiers, accompanied by Wheelwright, went to the Dee Hospital. There they saw Jens Christensen, who was in one of the wards of the hospital. After Spiers, Wheelwright, and Christensen had talked for a short time, Christensen stated that he wanted to talk privately with Spiers. Thereupon Wheelwright left the room. Spiers testified that Christensen then stated that he had built a house on property belonging to his wife, but that his wife had refused to convey to him the land upon which the house was built; that because of the trouble with his wife over the house he had left her and for a time lived at the Broom Hotel; that he always intended turning the savings account in the Ogden State Bank over to his brother, Antone Christensen; that Antone had helped him earn his money; that he desired to know how the account could be turned over to Antone; that he had a

passbook which was in a safety deposit box at the Commercial Security Bank; that the key to the safety deposit box was in his pants at home; that he could not get the key to the safety deposit box; that he had made out a will which was held by Mr. Stilwell at the Ogden State Bank. Mr. Spiers further testified that he promised Mr. Christensen that he would find out what was necessary to have the savings account at the Ogden State Bank turned over to Antone Christensen, the plaintiff in this action. Pursuant to the promise made to Jens Christensen, Mr. Spiers went to the Ogden State Bank on the day following the conversation and there informed Mr. Stilwell, who was in charge of the trust department of the bank, what Jens Christensen had told him. Thereupon Mr. Stilwell prepared a card directed to the Ogden State Bank. The card stated: "You are hereby authorized and instructed to add to my savings account No. 25695 with you the words 'or Antone Christensen, to either or the survivor.'" The card was given to the plaintiff. It is made to appear that Jens Christensen signed the card which was given to the plaintiff, but the record is silent as to the circumstances under which it was signed. On about April 17, 1927, plaintiff brought the card bearing the signature of Jens Christensen to Matthew W. Wheelwright. The card was then taken to the Ogden State Bank and delivered to Mr. Bigelow, the president of the bank. The signature of Jens Christensen was so blotted that Mr. Bigelow suggested that another card be made out for Jens Christensen to sign. The second card was made out and given to Mr. Wheelwright, who, in company with the plaintiff, took the card to Jens Christensen, who signed the same in the presence of Mr. Wheelwright and the plaintiff. The card was then delivered to the Ogden State Bank and the ledger account of Jens Christensen at the bank was changed to read: "Jens Christensen, Book No. 25695, 2877 Grant Avenue, City, or Antone Christensen, payable to either or survivor." The first card was destroyed at the request of Jens Christensen. The second card signed by Jens Christensen reads: "Ogden,

Utah, April 18, 1927, Ogden State Bank, Ogden, Utah. You are hereby authorized and instructed to add to my savings account No. 25695 with you the words 'or Antone Christensen, payable to either or the survivor.' Jens Christensen." It is further made to appear that the plaintiff and John H. Spiers were related by marriage. Their wives are sisters. Mr. Spiers is, and for many years has been, a member of the board of directors of the Ogden State Bank.

There is a conflict in the evidence as to whether or not Jens Christensen was competent to transact business at the time he signed the cards.

Dr. Bartlett, who was the attending physician of Jens Christensen during his last illness, testified in substance that Jens Christensen was a very sick man; that at about the time he signed the cards "he was apathetic as regards doing anything for himself in eating or drinking, and was in such a condition that he really didn't seem to appreciate that he was dying or was getting so low that he would die"; that he was childish and very easily influenced. In Dr. Bartlett's opinion Jens Christensen may have been mentally competent to understand ordinary business transactions at intervals at about the time the cards were signed but not at all times.

Martin Robertson testified that he occupied a bed in the same ward at the hospital as Jens Christensen; that he remembered the time when plaintiff and Wheelwright were at the hospital and secured the signature of Jens Christensen; that at that time Jens Christensen was very weak; that he "wouldn't talk to anybody, he couldn't speak above a whisper, he would move his hands and arms a little but the rest of his body he couldn't move, these men (plaintiff and Wheelwright) came in there with a paper and wanted him to sign his name, they put their arms behind his head and got him propped up in bed and put pillows behind him so that he would partially sit up, they put his pen in his hand and asked him to write his name, I suppose he done so but I can't tell whether he did or not, Mr. Wheelwright had his hand over

the hand of Jens Christensen helping him to write." In the opinion of Mr. Robertson, Jens Christensen did not understand or appreciate what he was doing when he signed the card.

On April 19th Jens Christensen was given a blood transfusion. The evidence is all to the effect that for a few days after the blood transfusion was given Mr. Christensen was delirious and incompetent to transact any business. Shortly after Mr. Christensen was taken from the hospital to his home on May 3, 1927, his condition improved. Agnes Hybee was employed to care for him. She took care of him until he was again removed to the hospital. She testified that during the time she was nursing Mr. Christensen he was worrying about having signed some document while in the hospital; that he said, "I would like to know if I have signed any papers up there but I don't have a recollection that I did"; that still he worried for fear he had; that he spoke about the papers a number of times.

The testimony of intervener Eliza M. Christensen is also to the effect that Jens Christensen was incompetent to transact business at the time he signed the cards. She also testified that while Jens Christensen was at home after he had signed the cards he said to her, "Them fellows just think they are going to get my money but I would just like to fool them."

The following witnesses testified on behalf of the plaintiff as to the mental condition of Jens Christensen at or near the time he signed the cards: Mildred Taylor, a nurse at the Dee Hospital, John K. Spiers, Edith Christensen, Matthew H. Wheelwright, and Dr. L. S. Merrill. The testimony of these witnesses tends to show that Jens Christensen was competent to transact business at or about the time he signed the cards. The testimony of John K. Spiers and Matthew H. Wheelwright is to the effect that Jens Christensen was normal mentally at the time he discussed with them his savings account and at the time he signed the cards. The

records kept by the nurses touching the condition of Jens Christensen while at the hospital were also received in evidence. The plaintiff did not testify at the trial.

After a careful review and consideration of the evidence offered touching the mental condition of Jens Christensen, we have concluded that we are not warranted in interfering with that finding of the trial court wherein it is found that Jens Christensen was competent to transact business at the time he signed the card which forms the basis of plaintiff's claim to the savings account here in controversy.

Plaintiff contends that under the evidence disclosed by the record he is entitled to the savings account here in dispute under any one of the following three legal theories: (1) That when the Ogden State Bank accepted the card signed by Jens Christensen and changed the ledger account of Jens Christensen to read, "or Antone Christensen, payable to either or the survivor," a new contract was entered into between the bank and Jens Christensen, whereby it was agreed that the bank should pay the savings account to Antone Christensen if he survived Jens Christensen. (2) That when the card was signed and the ledger account changed, the bank became a trustee of the savings account for the use and benefit of Antone Christensen in the event he survived his brother Jens. (3) That when the card was signed and delivered and the ledger account at the bank changed, the deceased and plaintiff became joint owners of the savings account, and upon the death of Jens Christensen his brother Antone became the sole and absolute owner of the account by right of survivorship. In support of such theories, counsel for plaintiff cite: *Sturgis* v. *Citizens' National Bank,* 152 Md. 654, 137 A. 378; *Olson* v. *Scott,* 61 Utah, 42, 210 P. 987; *Kelly* v. *Beers,* 194 N. Y. 49, 86 N. E. 980, 982, 128 Am. St. Rep. 543; *Skeen* v. *Marriott,* 22 Utah, 73, 61 P. 296; *Boyle* v. *Dinsdale,* 45 Utah, 112, 143 P. 136, Ann. Cas. 1917E, 363; *Jimpson* v. *Chandler,* 61 Utah, 325, 212 P. 1113; *Drinkhouse* v. *German Savings & Loan Soc.,* 17 Cal. App. 162, 118

P. 953; *Booth* v. *Oakland Bank of Savings,* 122 Cal. 19, 54
P. 370; *Williams* v. *Bank of Santa Rosa,* 33 Cal. App. 655,
166 P. 366; *Carr* v. *Carr,* 15 Cal. App. 480, 115 P. 261;
*Sprague* v. *Walton,* 145 Cal. 228, 78 P. 645; *Cahlan* v. *Bank,*
11 Cal. App. 533, 105 P. 765; *Logan* v. *Ryan,* 68 Cal. App.
448, 229 P. 993; *Ladner* v. *Ladner,* 128 Miss. 75, 90 So. 593;
*George* v. *Daly,* 83 Cal. App. 684, 257 P. 171; *Negaunee Nat'l
Bank* v. *La Beau, Adm'r,* 195 Mich. 502, 161 N. W. 974, L.
R. A. 1917D, 852; *Blackstone Canal Nat. Bank* v. *Oast,* 45
R. I. 218, 121 A. 223; *McKenna* v. *McKenna,* 260 Mass. 481,
157 N. E. 517; 39 Cyc. 94, and note 36; *Columbia Trust Co.*
v. *Anglum,* 63 Utah, 353, 225 P. 1089; 3 R. C. L., p. 527, §
155; *Cleveland Trust Co.* v. *Scobie, Adm'r,* 114 Ohio St. 241,
151 N. E. 373, 48 A. L. R. 182; *Battles* v. *Millbury Savings
Bank,* 250 Mass. 180, 145 N. E. 55; *Chase* v. *Smith,* 257 Mass.
252, 153 N. E. 452; *Raferty* v. *Reilly,* 41 R. I., 47, 102 A. 711;
*Kaufman* v. *Edwards,* 92 N. J. Eq. 554, 113 A. 598; *Commonwealth Trust Co.* v. *Du Mortimer,* 193 Mo. App. 290, 183
S. W. 1137; *Chippendale* v. *North Adams Savings Bank,*
222 Mass. 499, 111 N. E. 371; *Mardis* v. *Steen,* 293 Pa. 13,
141 A. 629; *Whitehead* v. *Smith,* 19 R. I. 135, 32 A. 168;
*McCleod* v. *Hennepin County Bank,* 145 Minn. 299, 176 N. W.
987; *Commercial Trust Co.* v. *White,* 99 N. J. Eq. 119, 132
A. 761; *Wisner* v. *Wisner,* 82 W. Va. 9, 95 S. E. 802; *First
Nat'l Bank of Aurora* v. *Mulich,* 83 Colo. 518, 266 P. 1110;
*Deal's Adm'r* v. *Merchants' & Mechanics' Savings Bank of
Norfolk,* 120 Va. 297, 91 S. E. 135, L. R. A. 1917C, 548;
*Kennedy* v. *McMurray,* 169 Cal. 287, 146 P. 647, Ann. Cas.
1916D, 515; *Havana Cent. R. Co.* v. *Cent. Trust Co. of New
York* (C. C. A.) 204 F. 546, L. R. A. 1915B, 715.

Intervenors contend: (1) That the contract between Jens
Christensen and the Ogden State Bank, both before and after
the card was signed and the ledger account changed, required
the presentation of the passbook by one rightfully in possession thereof before the bank had authority to pay any of
the savings account; that the passbook was not delivered by
Jens Christensen to the plaintiff, and therefore the bank was

under no contractual obligation to pay plaintiff the savings deposit account or any part thereof. (2) That the signing and delivering of the card and the changing of the ledger account did not constitute a valid gift to the savings deposit account, because (a) the degree of proof necessary to show an intention on the part of Jens Christensen to immediately pass title to the account or some part thereof is lacking (b) Jens Christensen did not actually or symbolically deliver possession of the account to his brother Antone (c) four requisites must exist to create a joint tenancy: "The tenants must have one and the same interest; the interest must accrue by one and the same instrument; the interest must commence at one and the same time; it must be held by one and the same undivided possession." (3) That as the evidence is insufficient to support a finding of a gift of the savings deposit account by Jens Christensen to Antone Christensen, so also must the trust theory fail because an imperfect gift cannot be converted into a perfect trust. In support of their contentions counsel for appellants cite: *Ashman's Estate*, 223 Pa. 543, 72 A. 899; *Rice* v. *Bank*, 93 Vt. 493, 108 A. 708; *O'Gorman* v. *Jolley*, 34 S. D. 26, 147 N. W. 78; 2 Story Eq. Jur. (14th Ed.) § 956; 3 Pomeroy Eq. Jur. (4th Ed.) § 997, and authorities cited in note; *Stevenson* v. *Earl*, 65 N. J. Eq. 721, 55 A. 1091, 103 Am. St. Rep. 790, 1 Ann. Cas. 49; *Flanagan* v. *Nash*, 185 Pa. 41, 39 A. 818; *McCullough* v. *Forrest*, 84 N. J. Eq. 101, 92 A. 595; *De Puy* v. *Stevens*, 37 App. Div. 289, 55 N. Y. S. 810; *Matter of O'Connell*, 33 App. Div. 483, 53 N. Y. S. 748; *Robinson* v. *Bank*, 7 Cal. App. 642, 95 P. 533, 535; *Whalen* v. *Milholland*, 89 Md. 199, 43 A. 45, 50, 44 L. R. A. 208; *Keepers* v. *Deposit Co.*, 56 N. J. Law, 302, 28 A. 585, 23 L. R. A. 184, 44 Am. St. Rep. 397; *Denigan* v. *San Francisco Savings Union*, 127 Cal. 142, 59 P. 390, 78 Am. St. Rep. 35; *Taylor* v. *Henry*, 48 Md. 550, 30 Am. Rep. 486; *Noyes* v. *Institution for Saving*, 164 Mass. 583, 42 N. E. 103, 49 Am. St. Rep. 484; *Norway Savings Bank* v. *Merriam*, 88 Me. 146, 33 A. 840; *Gordon* v. *Toler*, 83 N. J. Eq. 29, 89 A. 1020; *Walsh's Appeal*, 122 Pa.

177, 15 A. 470, 9 Am. St. Rep. 83, 1 L. R. A. 535; *Flanagan* v. *Nash,* 185 Pa. 41, 39 A. 818; *Grady* v. *Sheehan,* 256 Pa. 377, 100 A. 950; *Beaver* v. *Beaver,* 117 N. Y. 421, 22 N. E. 940, 6 L. R. A. 403, 15 Am. St. Rep. 531; *Kelley-Koet Mfg. Co.* v. *Goldenberg,* 207 Ky. 695, 270 S. W. 15; *Union Mutual Life Ins. Co.* v. *Broderick,* 196 Cal. 497, 238 P. 1034; *Miller* v. *Bank,* 115 Or. 366, 237 P. 361; 28 C. J. p. 634, § 23; *Rice* v. *Bennington Savings Bank,* 93 Vt. 493, 108 A. 708; *In re Slocum's Estate,* 83 Wash. 158, 145 P. 204; *Dingley* v. *Robinson,* 149 Wash. 301, 270 P. 1018; *Liebe* v. *Battmann,* 33 Or. 241, 54 P. 179, 72 Am. St. Rep. 705; *Holman* v. *Bank,* 41 Utah, 340, 124 P. 765; *Bath Sav. Inst.* v. *Hathorn,* 88 Me. 122, 33 A. 836, 32 L. R. A. 377, 51 Am. St. Rep. 382; *Young* v. *Young,* 80 N. Y. 422, 36 Am. Rep. 634; *Wadd* v. *Hazleton,* 137 N. Y. 215, 33 N. E. 143, 21 L. R. A. 693, 33 Am. St. Rep. 707; *Trust Co.* v. *Winthrop,* 238 N. Y. 477, 144 N. E. 686; *McCartney* v. *Ridgway,* 160 Ill. 129, 43 N. E. 826, 32 L. R. A. 555; *Weaver* v. *Weaver,* 182 Ill. 287, 55 N. E. 338, 74 Am. St. Rep. 173; *Barnum* v. *Reed,* 136 Ill. 398, 26 N. E. 572; *Overheiser* v. *Lackey,* 207 N. Y. 229, 100 N. E. 738, Ann. Cas. 1914C, 229; *Goldstein* v. *Hammell,* 236 Pa. 305, 84 A. 772; *Mustain* v. *Gardner,* 203 Ill. 287, 67 N. E. 779; *Johnston* v. *Johnston,* 173 Mo. 91, 73 S. W. 202, 61 L. R. A. 166, 96 Am. St. Rep. 486; 7 R. C. L. p. 811, § 3; *Case* v. *Owen,* 139 Ind. 22, 38 N. E. 395, 47 Am. St. Rep. 253; Thompson, Real Property, 1711; *Hart* v. *Hawkins,* 6 Ky. (3 Bibb) 502, 6 Am. Dec. 666; *Flanders* v. *Blandy,* 45 Ohio St. 108, 12 N. E. 321.

The cases cited by learned counsel in support of their respective positions are well chosen, and we wish to express our appreciation for the thorough and painstaking manner in which they have collected the cases and authorities dealing with the questions here presented for review.

No claim is made, and obviously there is no basis for a claim, that the card which was signed by Jens Christensen meets the requirements of a testamentary disposition of property.

We are clearly of opinion that on the record before us plaintiff was not entitled to recover judgment against the Ogden State Bank for the savings deposit account on the theory of a contractual obligation on the part of the bank to pay the account to Antone Christensen. The contract of deposit provided: "The depositor cannot receive either principal or interest without producing his pass book, but payments may be made to a third person upon presentation of a depositor's written order and his pass book." The plaintiff has not complied with this provision of the contract of deposit. He has presented a written order from Jens Christensen, but that is only one of the conditions that must be performed before he is entitled, under the contract of deposit, to receive payment of either principal or interest. When the contract of deposit was entered into between Jens Christensen and the Ogden State Bank, they expressly made presentation of the passbook a prerequisite to the right of the bank to pay either principal or interest to a third person. Not only the bank, but Jens Christensen, while living, and his executor since his demise, may well rely on the express terms of the contract of deposit. Nor can it be said that the Ogden State Bank has waived a compliance with the contract of deposit by changing the ledger account so that it is payable to Jens Christensen "or Antone Christensen, to either or survivor." The mere changing of the account in the ledger cannot be said to nullify the provisions of the contract of deposit. Even though it may be said, as contended by respondent, that the bank by changing the ledger account waived the presentation of the passbook, such waiver on the part of the bank cannot bind Jens Christensen or his legal representative. The card which Jens Christensen signed does not waive, or purport to waive, the provisions of his contract of deposit with the Ogden State Bank wherein it is agreed that the bank will not make payment of either principal or interest of the savings deposit account without the presentation of the pass book. Moreover, even if the bank should make payment of the savings

account to plaintiff, such fact would leave the principal question which divides the parties to this proceeding undecided. The real controversy which divides the parties here is whether or not plaintiff is the owner of either the legal or equitable title to the savings account. Even though the bank might be protected in paying to plaintiff the amount owing on the account, still the controversy between the interveners and plaintiff would not necessarily be settled. The plaintiff must succeed, if at all, upon the theory that Jens Christensen parted with the legal or equitable title to the account during his lifetime. Obviously, if Jens Christensen was the sole owner of both the legal and the equitable title to the account when he died, the plaintiff must fail in his claim that the account belongs to him.

It is impossible to reconcile all of the cases and authorities cited by counsel. There are, however, some essentials to a valid gift of a savings deposit account which are recognized by all courts and textwriters. Thus, before any right to a savings deposit account can be said to pass from a donor to a donee, there must be a donative intention. The donor must intend that either the legal or the equitable title to the fund shall pass to the donee. The intention must be that some title to the account shall pass during the life of the donor, otherwise the gift must fail unless the requirements of the law as to testamentary disposition of property have been complied with. It is also uniformly held that a mere intention to make a gift to take effect during the life of the donor is not sufficient to pass any title either legal or equitable. There must be some act performed by the donor which indicates his intention to vest in the donee some right to the property during the life of the donor. The courts are not in accord as to what acts are necessary for a donor to perform in order that his intention shall be given effect. Some courts hold that in case of a savings deposit account actual delivery of the passbook by the donor to the donee is necessary to pass title to the account to the donee. Other courts hold that if a donor has both the account and

the passbook made out jointly to his own name and that of the donee, a gift will be sustained even though the passbook is not actually delivered to the donee. A few cases seem to take the view that the owner of a savings deposit account may create a trust in favor of a third person by merely having the account changed on the books of the bank to the joint names of the owner and a third person. While there is a conflict in the cases and authorities as to what acts are necessary for the donor to perform in order that a donee may acquire an enforcible interest in a savings deposit account, all of the well-considered cases hold that before a gift of a savings deposit account will be enforced it must be clearly made to appear that the donor intended a gift and that the gift should take effect during the life of the donor. The following quotations show the trend of judicial authority:

"When the claim of a gift is not asserted until after the death of the alleged donor, it should be sustained by clear and satisfactory evidence of every element which is requisite to constitute a gift." Robinson v. Bank, supra.

"He who attempts to establish title to property through a gift inter vivos, as against the estate of a decedent, takes upon himself a heavy burden, which he must support by evidence of great probative force, which clearly establishes every element of a valid gift,—that the decedent intended to devest himself of the title in favor of the donee, and accompanied his intent by a delivery of the subject-matter of the gift." Matter of O'Connell, supra.

"Mindful of the facility with which, after the alleged donor is dead, fraudulent claims of ownership may be founded on pretended gifts of his property asserted to have been made while he was living, it is but a salutary precaution which demands explicit and convincing evidence of every element needed to constitute a valid donation, whether it be a donation inter vivos or mortis causa. Even then fraudulent claims may prevail, but the rigid requirement of the clearest proof will at least diminish the number." Whalen v. Milholland, supra.

It is an elementary rule of law that in gifts inter vivos as well as gifts causa mortis the title to the thing given must

pass from the donor to the donee. In contemplation of law
there can be no executory gift. Whether a given transaction
be called a gift or a voluntary trust, there must be a
passing of some title from the donor to the donee. 
In the case of a gift proper, the legal as well as the
equitable title passes from the donor to the donee. In the
case of a voluntary trust the equitable title must pass to the
cestui que trust, while the legal title is transferred to a third
person or is retained by the person creating the trust to
hold for the purpose of the trust. At common law in a case
of a gift inter vivos or of a gift causa mortis of personal
property capable of manual delivery, an actual delivery of
the property is necessary to consummate the gift. The rule
is founded upon public policy and is calculated to defeat
fraudulent claims against the estates of deceased persons.
The rule has been relaxed as to personal property not capa-
ble of manual delivery. In such case a symbolic delivery is
held sufficient to constitute an enforceable gift. In all cases,
however, before a claimant is entitled to prevail in his claim
that a deceased person has made a gift of property to such
claimant, the proof that the deceased person intended that
some title to the thing claimed should pass to the claimant
during the life of the donor must be clear and convincing.
Keeping these principles in mind, let us again refer to the
evidence in this case.

Jens Christensen was critically ill when he signed the
card. While the testimony of Mr. Spiers and Mr. Wheel-
wright shows that the deceased intended to make a gift of
his savings deposit account to his brother at some time, such
testimony fails to show that the gift was intended to
take effect during the life of Jens Christensen. The 
plaintiff was active in procuring the signature of the
deceased. About three years before Jens Christensen signed
the card, he had executed a will whereby substantially all of
his estate upon his death was to be divided one-third to his
wife, one-third to the children of a deceased sister, and one-
third to plaintiff. It is a fair inference that deceased knew

that no one except himself could get any part of the savings account without presenting the passbook. The deceased was repeatedly asked about his passbook, but, so far as appears, he made no attempt to secure the passbook but contented himself with telling Mr. Spiers and Mr. Wheelwright that the key was in his pants at home and no one could get the key. After he was removed to his home, he so improved that it was thought he would recover. While at his home he worried about the papers he had signed, or feared that he had signed. He told his nurse, Agnes Hybee, that the key to his safety deposit box was in his pants in the closet, yet, so far as is made to appear, he made no attempt to secure the key and did nothing which was calculated to indicate that his brother was entitled to the possession of the key or the passbook. When he was on the way to recovery he told his wife that he would like to fool the "fellows" who thought they were going to get his money. If the deceased intended that the title to the savings deposit account should, during his life, pass to plaintiff, it is difficult to understand why the deceased did not deliver the key to the safety deposit box to his brother or perform some other act calculated to make it possible for him to get possession of the passbook. Likewise, if the deceased intended to part with title to the account, it is difficult to understand why he should have worried about the paper that he had signed while at the hospital and to entertain the hope that he would fool those who were trying to get his money. While there may be circumstances which will support a gift or voluntary trust in a savings deposit account in the absence of delivery of the passbook and in the absence of the changing of the names of the persons to whom the passbook is issued, we are of the opinion that the record in this case does not justify sustaining the claim of plaintiff to the savings deposit account upon either of plaintiff's theories. As we view this record, we are forced to the conclusion that the deceased intended that the title to the savings account should remain in himself until his death.

Respondent in his brief assails the sufficiency of the assignments of error. Appellant's first assignment of error reads:

"There is no competent evidence to support the finding of the court that the deceased, Jens Christensen, by the signing and delivering to Ogden State Bank the card containing the writing set out in finding number four, intended to give the money on deposit in the defendant Ogden State Bank, mentioned in the fourth finding, to the plaintiff. On the contrary the undisputed evidence shows that none of said money could be withdrawn from the bank without the presentation of the pass book, and that the passbook was never delivered to the plaintiff, nor was there any attempt on the part of the deceased to deliver possession of the same, although the undisputed evidence shows that the deceased lived more than two months after said card was signed and delivered, and was visited by the plaintiff in the hospital and at his home, and that if the deceased had intended or desired to deliver said pass book or said money to the plaintiff there was nothing to prevent him from doing so.

"Said writing upon its face shows that the deceased intended to and did retain control of and dominion over said deposit and money with the right to withdraw and receive payment of any or all of it up to the time of his death, and that at no time was the plaintiff given any control over said deposit or the right to demand payment thereof from the defendant bank."

The foregoing assignment is sufficient to meet the requirements of rule 26 of this court.

The judgment appealed from is reversed, and the cause is remanded to the district court of Weber county with directions to that court to grant a new trial. Appellants are awarded their costs.

CHERRY, C. J., and STRAUP, EPHRAIM HANSON, and FOLLAND, JJ., concur.